· The PEOPLE of the State of
Colorado, Complainant,

v.

John Harvey WALLACE, Attorney–
Respondent.

No. 96SA404.

Supreme Court of Colorado,
En Banc.

April 14, 1997.

Linda Donnelly, Disciplinary Counsel and James C. Coyle, Assistant Disciplinary Counsel, Denver, for Complainant.

Kerry S. Hada, P.C., Kerry S. Hada, Englewood, for Attorney–Respondent.

PER CURIAM.

This is a lawyer discipline case in which a hearing panel of the supreme court grievance committee approved the findings of a hearing board, including the recommendation that the respondent be disbarred. The respondent has excepted to the recommendation that he be disbarred as being too severe. We nevertheless accept the recommendation and order that the respondent be disbarred.

I.

The respondent was admitted to practice law in Colorado in 1989. This proceeding involves the consolidation of three separate complaints. The respondent defaulted before the hearing board because he did not answer any of the complaints and the factual allegations of the complaints were therefore admitted. See C.R.C.P. 241.13(b); *People v. Barr*, 855 P.2d 1386, 1386 (Colo.1993). Based on the respondent's defaults and the evidence presented, the hearing board determined that the following had been established by clear and convincing evidence.

A.

Margaret Paschke hired the respondent on March 2, 1995, to represent her in a personal injury matter. She paid him $500 as an advance on costs, but she understood that the case would be handled on a contingent fee basis. The respondent did not place the $500 in his trust account, and no complaint was ever filed on his client's behalf. He did not return many of her telephone calls, did not comply with requests for information, and did not keep several scheduled meetings with her. Paschke informed the respondent that she would come to his office on July 15, 1995, to pick up her file and her deposit. When she did, the respondent told her that he could not find her file. The respondent failed to return her retainer even after Paschke filed a request for investigation with the Office of Disciplinary Counsel. The hearing board therefore concluded that the respondent knowingly converted his client's $500 to his own use. The respondent's sister, his part-time law partner, did reimburse Paschke.

The respondent's conduct violated R.P.C. 1.3 (neglecting a legal matter), R.P.C. 1.4(a) (failing to keep a client reasonably informed about the status of a matter), R.P.C. 1.15(a)

(failing to keep client funds in an account separate from the lawyer's own funds), R.P.C. 1.15(b) (failing to return or account for client property), and R.P.C. 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation).

### B.

The hearing board found that the circumstances in three additional client matters, charged in three counts of the consolidated complaints and involving Valerie J. Arent, Stacy Christ, and Bonnie Gitto, followed a

> virtually identical pattern as that described in the Paschke case: Respondent was paid a retainer which he failed to deposit in a trust account. He then failed to act with reasonable diligence, neglected the client's legal problem, failed to comply with reasonable requests by the client for information, and failed to account for or return the retainer, converting the funds to his own use.... In each of these situations, Respondent's sister and part-time partner, Cynthia Wallace, later reimbursed the client for the misappropriated retainer from her own funds.

As in the Paschke matter, the respondent thereby violated R.P.C. 1.3, R.P.C. 1.4(a), R.P.C. 8.4(c), R.P.C. 1.15(a), and, in the Arent and Christ matters, R.P.C. 1.15(b).[1]

### C.

The respondent's misconduct in yet another client matter ran along similar lines. James L. Eve, Jr., paid the respondent an advance fee, but the respondent neglected Eve's legal problem, and did not comply with the client's reasonable requests for information, violating R.P.C. 1.3, R.P.C. 1.4(a), and R.P.C. 8.4(c). In this case, however, the respondent did refund the advance fee after Eve requested it.

### D.

Jokima J. Wilson hired the respondent to represent her in a dissolution of marriage proceeding. Following a permanent orders hearing on January 4, 1995, the district court entered a decree of dissolution and instructed the respondent to prepare permanent orders and submit them to the court within ten working days. The respondent has never submitted the permanent orders to the court, nor has he filed a motion to withdraw as Wilson's lawyer in the dissolution case. Wilson was subsequently served with process in a civil action to recover a debt the dissolution court had declared to be her ex-husband's responsibility. Wilson informed the respondent in February 1995 that she had been served and he told her that he would assist her. In fact, he did not assist her or even acknowledge any of her ensuing requests for information. The board concluded that "it appears that Respondent actually abandoned [Wilson] and her cause."

The respondent's conduct violated R.P.C. 1.3, R.P.C. 1.4(a), R.P.C. 1.16(d) (failing to take steps to the extent reasonably practicable to protect a client's interests upon termination of representation), and R.P.C. 8.4(d) (engaging in conduct that is prejudicial to the administration of justice).

### E.

The respondent was retained by Alvin R. Trimble to represent him in his efforts to clear the title to a vehicle which he had purchased from a used car dealership, to assert a claim against the dealership's bond, and to handle certain insurance claims concerning damage to the vehicle. The respondent took no action on Trimble's behalf except for some assistance on the insurance problem. Nor did he help his client after the vehicle was impounded in mid–1995 although he said he would. Trimble's attempts to obtain his file, after the respondent did not appear for a scheduled appointment on July 19, 1995, were unsuccessful until the respondent's sister returned it in November of 1995. The respondent again violated R.P.C. 1.3, R.P.C. 1.4(a), and R.P.C. 1.16(d).

### II.

■ The hearing panel approved the board's recommendation that the respondent

---

1. Although the respondent was not charged with violating R.P.C. 1.15(b) in the Gitto matter, the board stated that "it appears from the evidence that he could have been [charged]."

be disbarred. The respondent's counsel has filed exceptions to the panel's action, and claims that a suspension in the range of one year and one day to three years is more appropriate than disbarment.

The hearing board found that, "at a minimum," the respondent caused serious harm in the Arent, Christ, Wilson, and Trimble cases. While the respondent disputes that he caused any of the clients serious harm, the record supports the hearing board's contrary determination. Under the ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards* ), in the absence of mitigating factors, disbarment is appropriate when:

> (a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or
>
> (b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or
>
> (c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

ABA *Standards* 4.41. *See, e.g., People v. Townshend,* 933 P.2d 1327, 1329 (Colo.1997) (lawyer disbarred who effectively abandoned two clients after accepting retainers and failing to account for or return the unearned retainers); *People v. Steinman,* 930 P.2d 596, 599–600 (Colo.1997) (lawyer disbarred who accepted fees from clients and then abandoned them while keeping their money and causing serious harm); *People v. Jamrozek,* 914 P.2d 350, 354 (Colo.1996) (lawyer disbarred who accepted fees from a number of clients, then abandoned them, causing clients substantial harm); *People v. Tucker,* 904 P.2d 1321, 1325 (Colo.1995) (lawyer disbarred who abandoned her clients while continuing to collect attorney fees for work that would not be performed); *People v. Fritsche,* 897 P.2d 805, 806–807 (Colo.1995) (lawyer who effectively abandoned clients and disregarded disciplinary proceedings disbarred).

Moreover, the hearing board found that the respondent had knowingly converted client funds belonging to Paschke, Arent, Christ, and Gitto. "Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client." ABA *Standards* 4.11; *see, e.g., People v. Lavenhar,* 934 P.2d 1355, 1359 (Colo.1997) (lawyer disbarred who knowingly misappropriated check belonging to third party); *People v. Mundis,* 929 P.2d 1327, 1331 (Colo.1996) (lawyer disbarred for knowing misappropriation of client funds, neglect of client matters, and practicing law under suspension).

The hearing board concluded that the following aggravating factors were present: the respondent has a prior record of discipline consisting of a three-month suspension in 1992 for assaulting his girlfriend, *see People v. Wallace,* 837 P.2d 1223 (Colo.1992); *see also* ABA *Standards* 9.22(a) (prior discipline is an aggravating factor); the respondent had a dishonest or selfish motive, *id.* at 9.22(b); there is a pattern of misconduct, *id.* at 9.22(c); there are multiple offenses, *id.* at 9.22(d); the respondent has failed to cooperate in these discipline proceedings, *id.* at 9.22(e); and he has refused to acknowledge the wrongful nature of his misconduct, *id.* at 9.22(g).

The respondent did not attend or participate in the disciplinary proceedings personally, although he was represented by counsel and his sister testified in mitigation. The hearing board found no factors in mitigation, however. The fact that the respondent's law partner reimbursed the client funds that the respondent had misappropriated is of course not a mitigating factor in his favor.

The most significant mitigating circumstance that the respondent's lawyer tried to demonstrate was summarized by the hearing board as follows:

> By way of mitigation Respondent's counsel presented the testimony of Cynthia Wallace, Respondent's sister and part-time law partner. Ms. Wallace testified that in April of 1995 Respondent had undertaken the representation of some drug-traffickers in various criminal matters. Ms. Wallace said that this representation continued into the third week of August of that year, and she testified that the Respondent had told her that to secure his loyalty to them

and their causes, these dangerous men kept Respondent a virtual prisoner, allowing him little or no contact with his other clients or the outside world, and that to guarantee his silence the men threatened the lives of his young daughters.... Respondent also told Ms. Wallace that the men had caused the deaths of other persons and that he was in fear for his own life. During this time, Respondent's presence in the office became less and less frequent, his attendance to clients' business ceased, and he would not answer or return telephone calls and he eventually stopped coming to the office altogether. Ultimately, Respondent persuaded Ms. Wallace that his only escape was to give up his practice and to disappear. All of this, Ms. Wallace testified, was taking place during the period of Respondent's misconduct described in the seven counts of the consolidated complaints, and she further testified that it was Respondent's fear of reprisal that prevented his cooperation and participation in these disciplinary proceedings.

■ The hearing board did not, however, find the respondent's story to be credible:

> While the Board found Ms. Wallace herself to be a credible witness, believing in the veracity of her brother, substantially all of her testimony was based on the hearsay reports of the Respondent. *The Hearing Board does not find Respondent's tale to be credible, and the Board does not accept it in explanation or mitigation of his conduct.*

(Emphasis added.) It is the hearing board's duty to assess the credibility of the evidence presented to it, and the board's factual findings on the credibility of evidence or testimony is binding on this court unless not supported by the record. *See People v. Pittam,* 889 P.2d 678, 679 n. 4 (Colo.1995). The board's findings on the credibility of the respondent's evidence in mitigation are supported by the record and we accept them.

The seriousness of the respondent's misconduct makes disbarment the only appropriate outcome in this case. Accordingly, we accept the hearing panel's and board's rec-

ommendation that the respondent be disbarred.

### III.

It is hereby ordered that John Harvey Wallace be disbarred and that his name be stricken from the list of attorneys authorized to practice before this court, effective thirty days after the issuance of this opinion. It is also ordered that the respondent pay the costs of this proceeding in the amount of $171.49 within thirty days to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202.