### The PEOPLE of the State of Colorado, Complainant,

v.

### Lynn DAITZMAN, Respondent.

### Nos. 01PDJ034, 01PDJ059.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

June 11, 2002.

Opinion by Presiding Disciplinary Judge ROGER L. KEITHLEY and Hearing Board members, WILLIAM R. GRAY and KATHLEEN KILLIAN, both members of the bar.

## REPORT, DECISION AND IMPOSITION OF SANCTION

*SANCTION IMPOSED:* **ATTORNEY DISBARRED**

A sanctions hearing pursuant to C.R.C.P. 251.15 was held on February 26, 2002, before the Hearing Board consisting of the Presiding Disciplinary Judge ("PDJ") and two hearing board members, William R. Gray and Kathleen Killian, both members of the bar. Terry Bernuth, Assistant Attorney Regulation Counsel represented the People of the State of Colorado (the "People"). Lynn Daitzman ("Daitzman"), the respondent, did not appear either in person or by counsel.

The Complaint in Case No. 01PDJ034 was filed April 2, 2001 and amended on April 5, 2001. The Citation and Amended Complaint were sent by regular and certified mail to Daitzman on April 5, 2001, to her registered business address, 600 17th Street, Suite 950–South, Denver, Colorado, 80202. A copy was also sent to the additional address of 3127 West 24th Ave., Apt. 4, Denver, CO 80211–4649. A proof of service was filed May 1, 2001. Service was therefore proper pursuant to C.R.C.P. 251.32(b). Daitzman did not file an Answer to the Amended Complaint. On May 23, 2001, the People moved for default, and the PDJ granted the default, deeming admitted the allegations of fact set forth in the Amended Complaint, and deeming established the claims set forth therein.

The Complaint in Case No. 01PDJ059 was filed on May 25, 2001. The Complaint and Citation were sent by regular and certified mail to Daitzman on May 25, 2001. A proof of service was filed July 6, 2001. Service was therefore proper pursuant to C.R.C.P. 251.32(b). Again, Daitzman did not file an Answer to the Complaint. The People moved for default, which was granted in part and denied in part on August 30, 2001. On September 12, 2001, the People filed an

Amended Complaint and Daitzman did not file an Answer thereto. The People moved for default, which was granted on December 12, 2001, deeming admitted the allegations of fact set forth in the Amended Complaint and deeming established the claims set forth therein. The two matters were consolidated on June 26, 2001.

At the sanctions hearing, the People presented testimony from Tammy Andrus and Joyce Santero. Exhibits 1 through 8 were offered by the People and admitted into evidence. The Hearing Board considered the People's argument, the facts established by the entry of default, the exhibits admitted, assessed the testimony and credibility of the witnesses and made the following findings of fact which were established by clear and convincing evidence.

## I. FINDINGS OF FACT

Daitzman has taken and subscribed to the oath of admission, was admitted to the bar of the Supreme Court on April 30, 1992 and is registered upon the official records of this court, registration number 21331. Daitzman is subject to the jurisdiction of this court pursuant to C.R.C.P. 251.1(b).

All factual allegations set forth in the Amended Complaints in this consolidated matter were deemed admitted by the entry of default, and are therefore established by clear and convincing evidence. *See* Amended Complaints attached hereto as exhibits 1 and 2. The orders entering default also granted default as to all alleged violations of The Rules of Professional Conduct set forth therein.

## II. CONCLUSIONS OF LAW

### The Andrus Matter

In May 1999, Tammy Andrus ("Andrus") hired respondent to represent her in post-decree dissolution matters concerning custody of two minor children. When a dispute arose regarding the interpretation of the court's order concerning parenting time of the parties, Andrus repeatedly attempted to contact Daitzman but Daitzman did not return the calls. When Andrus again attempted to contact Daitzman concerning an emergency custody matter, Daitzman again failed to return her phone calls.

Opposing counsel, unable to reach Daitzman over a two-month period, filed a motion with the court concerning parenting time. Daitzman did not respond to the motion and did not advise the client that it had been filed. Instead, she attempted to withdraw from the case. Her motion was denied. The court repeatedly attempted to contact Daitzman and after much difficulty, spoke with her and arranged that the court would contact her to initiate a status conference. When the court attempted to do so, however, Daitzman's phone had been disconnected. Daitzman failed to attend the status conference, and did not inform her client that the status conference had been scheduled. The court allowed replacement counsel to represent Daitzman's client's interests. Daitzman did not respond to the motion for substitution of counsel. The matter was ultimately resolved at considerable additional expense to the client. Daitzman failed to respond to a request for investigation regarding this matter from the Office of Attorney Regulation Counsel.

Daitzman's failure to return the client's and opposing counsel's phone calls constituted a violation of Colo. RPC 1.4(a)(an attorney shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information) and Colo. RPC 1.3 (an attorney shall act with reasonable diligence and promptness in representing a client). Her failure to respond to the motion regarding parenting time, her failing to advise the client that it had been filed, and her failure to appear at the status conference constituted a violation of Colo. RPC 1.3 (neglect). Daitzman also failed to take steps necessary to protect the client's interests after termination in violation of Colo. RPC 1.16(d)(upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests).

Daitzman's handling of the Andrus matter warrants a finding of abandonment. To find abandonment rather than merely neglect, there must be proof that the attor-

ney—during a given time period—was required to accomplish specific professional tasks for the client, failed to accomplish those tasks, and failed to communicate with the client. *People v. Carvell,* No. 99PDJ096, slip op. at p. 9 (Colo. PDJ September 11, 2000), 2000 Colo. Discipl. LEXIS 26. The proof must objectively indicate that the attorney has deserted, rejected and/or relinquished the professional responsibilities owed to the client. *Id.* The totality of facts establish that Daitzman deserted, rejected and/or relinquished the professional responsibilities owed to her client and thereby abandoned her.

■ Daitzman's failure in responding to the request for investigation constituted grounds for discipline pursuant to C.R.C.P. 251.5(d) and a violation of Colo. RPC 8.1(b)(an attorney shall not knowingly fail to respond reasonably to a lawful demand for information from a disciplinary authority).

### The Santero Matter

On September 13, 1999, Ms. Joyce Santero and her son Kurt Santero met with Daitzman to discuss initiating a child custody case. The Santeros were urgently attempting to obtain custody of Kurt Santero's five-year old son and prevent the mother—who was suffering from a drug addiction—from taking the child. Daitzman requested and was paid $1,530.00 for her representation and costs. She deposited the funds into her personal account rather than a trust account, and withdrew the funds within the next five days for her personal use. Thereafter, Daitzman met with the clients on September 30, 1999 to assist them in petitioning the court for a restraining order against the child's mother. The petition was filed the same day, and a hearing date scheduled for October 21, 1999.

On the date of the hearing, Daitzman arrived late. By the time Daitzman appeared, the court had dismissed the matter based on her failure to appear. Daitzman assured the client that she would file the matter again. Several months passed and Daitzman did not contact the clients and did not return their calls. The matter required immediate attention because the mother—who was potentially dangerous to the child—requested that the child be returned. Because Daitzman had

not taken the necessary steps to obtain custody, the clients were constrained to return the child to the mother.

After failing to reach Daitzman over an eight month period, the clients requested a refund. Although Daitzman signed for the certified letter sent by the clients, she did not contact the clients nor tender a refund to them.

■ By failing to communicate with the clients regarding the custody matter, Daitzman violated Colo. RPC 1.4(a)(an attorney shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information). By failing to appear for a hearing resulting in the matter being dismissed, and by failing to pursue custody of the child on behalf of the clients, Daitzman neglected the clients' legal matter in violation of Colo. RPC 1.3 (an attorney shall act with reasonable diligence and promptness in representing a client). Daitzman's neglect of the Santero matter rose to the level of abandonment. *See Carvell, supra,* (stating that a finding of abandonment must objectively indicate that the attorney has deserted, rejected and/or relinquished the professional responsibilities owed to the client); *People v. Schmeiser,* 35 P.3d 645, 647 (Colo. PDJ 2001)(finding abandonment where attorney closed his office, allowed his telephone service to be terminated, failed to inform his client of those changes, and failed to communicate with his client following the office closure).

■ By accepting the clients' funds, failing to perform the services she was hired to perform, depositing the funds in her personal account, and using them for her own benefit, Daitzman knowingly converted the clients' funds for her own use in violation of Colo. RPC 8.4(c)(it is professional misconduct for an attorney to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). Daitzman's failure to refund the unearned portion of the $1,530.00 to her client for over a year, knowing that she had not performed the services for which the funds were paid is sufficient evidence to conclude that Daitzman knowingly converted her clients' funds in violation of Colo. RPC

8.4(c)(engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). *See People v. Elliott,* 39 P.3d 551, 555–56, (Colo. PDJ 2000) (disbarring attorney for his accepting advance fees from two clients, performing some but not all of the services for which he was paid, retaining the fees for one year in one matter and two years in another matter, and abandoning the clients, *citing People v. Singer,* 897 P.2d 798, 801 (Colo.1995)(holding that extensive and prolonged neglect is considered willful misconduct)); *People v. Silvola,* 915 P.2d 1281, 1284 (Colo.1996)(finding that misconduct that occurred over an extended period of time must be deemed to be willful); *People v. Varallo,* 913 P.2d 1, 11 (Colo.1996)(holding that knowing misappropriation [for which the lawyer is almost invariably disbarred] consists simply of a lawyer taking a client's money entrusted to him, knowing that it is the client's money and knowing that the client has not authorized the taking), *citing In re Noonan,* 102 N.J. 157, 160, 506 A.2d 722 (1986). Misappropriation includes not only stealing, but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom, *citing In re Wilson,* 81 N.J. 451, 455 n. 1, 409 A.2d 1153 (1979). The motive of the lawyer is irrelevant in determining the appropriate discipline for knowing misappropriation. (citation omitted).

### III. SANCTION/IMPOSITION OF DISCIPLINE

■ Colorado law provides that in the absence of substantial mitigating factors, disbarment is the presumed sanction when an attorney knowingly misappropriates clients' funds. *See Varallo,* 913 P.2d at 12, *citing People v. Lefly* 902 P.2d 361 (Colo.1995)(lawyer's knowing conversion of client funds almost always merits disbarment even if the funds are eventually replaced).

■ In both the Andrus and Santero matters, Daitzman's complete disregard for the exigent needs of her clients and the pattern of serious neglect of her clients' legal matters rose to the level of abandonment. The presumed sanction for knowing conversion coupled with abandonment of an attor-

ney's clients also results in disbarment. *See People v. Wallace,* 936 P.2d 1282, 1284 (Colo. 1997) (disbarring lawyer who abandoned clients, causing them serious harm, and knowingly misappropriated client funds); *People v. Townshend,* 933 P.2d 1327, 1329 (Colo.1997)(lawyer disbarred who effectively abandoned two clients after accepting retainers and failing to account for or return the unearned retainers); *People v. Gilbert,* 921 P.2d 48, 50 (Colo.1996)(attorney disbarred for converting client funds in conjunction with abandonment of practice); *People v. Jenks,* 910 P.2d 688, 692(Colo.1996)(attorney disbarred for accepting legal fees from a number of clients and then abandoning them, causing some of the clients substantial harm); *People v. Tucker,* 904 P.2d 1321, 1325 (Colo.1995)(lawyer disbarred who abandoned clients while continuing to collect attorney fees for work that would not be performed); *People v. Fritsche,* 897 P.2d 805, 806–807 (Colo.1995)(lawyer who effectively abandoned clients and disregarded disciplinary proceedings disbarred).

The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") are the guiding authority for selecting the appropriate sanction to impose for lawyer misconduct. ABA *Standard* 4.11 provides that "[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client."

ABA *Standard* 4.41(b) and (c) provide that disbarment is generally appropriate when:

(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to the client.

In the present case, Daitzman knowingly converted funds belonging to her client, and in two separate matters failed to perform the services she was engaged to perform. Knowing conversion alone warrants disbarment. *Varallo, supra.* When coupled with Daitzman's abandonment of her clients in two matters and her failure to respond to the

request for investigation in one matter, disbarment is clearly the warranted sanction.

Determination of the appropriate sanction requires the Hearing Board to consider aggravating and mitigating factors. Since Daitzman did not participate in these proceedings, no mitigating factors were established. The facts deemed admitted in the Amended Complaints established several aggravating factors pursuant to ABA *Standard* 9.22. Daitzman engaged in a pattern of misconduct, *see id.* at 9.22(c); she engaged in multiple offenses, *see id,* at 9.22(d); in both the Andrus and Santero matters, the clients were vulnerable, *see id.* at 9.22(h); Daitzman demonstrated indifference to making restitution, *see id.* at 9.22(j), and she engaged in bad faith obstruction of the disciplinary proceeding, *see id.* at 9.22(e).

Moreover, Daitzman has had prior discipline, an aggravating factor under ABA *Standard* 9.22(a). In 1995, Daitzman received a Letter of Admonition for neglect and lack of competence in dealing with a Uniform Parentage Act matter. In 2001, she was suspended from the practice of law for a period of three years for conduct similar to the conduct at issue in the present case. *People v. Daitzman,* Case No. 00PDJ052 (Colo. PDJ January 24, 2001) 2001 Colo. Discipl. LEXIS 23, *13. In that matter, Daitzman was suspended for engaging in a pattern of serious neglect and lack of communication with her clients, including one case of abandonment.

## IV. ORDER

It is therefore ORDERED:

1. LYNN DAITZMAN, attorney registration number 21331 is DISBARRED from the practice of law effective thirty-one days from the date of this Order.

2. Daitzman is ordered to pay restitution to the client protection fund in the amount of $1,530.00 with interest at the statutory rate from December 18, 2001 within one year from the date of this Order.

3. Daitzman is Ordered to pay the costs of these proceedings; the People shall submit a Statement of Costs within ten (10) days of the date of this Order. Respondent shall have five (5) days thereafter to submit a response thereto.

## EXHIBIT 1

### AMENDED COMPLAINT

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251.9 through 251.14, and it is alleged as follows:

The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on April 30, 1992, and is registered upon the official records of this court, registration No. 21331. She is subject to the jurisdiction of this court in these disciplinary proceedings. The respondent's registered business address is 600 17th Street, Suite 950 South, Denver, Colorado 80202. The respondent's registered home address is 800 Ogden Street, Denver, Colorado 80218. The respondent's most recent address known to this office is 3127 W. 24th Avenue, Apartment 4, Denver, Colorado 80211–4649.

### GENERAL ALLEGATIONS

On September 13, 1999, the complaining witness, Ms. Joyce Santero, and her son Kurt Santero met with the respondent to discuss initiating a child custody case. Kurt Santero's five year old son was living exclusively with him at the time. According to Mr. Santero, the child's mother was homeless and a drug addict. At the time the Santeros met with the respondent, the biological mother had had no contact with the child for two months. Neither Mr. Santero nor the biological mother had initiated any legal action previously to determine their rights and responsibilities with respect to the child. The clients were advised by the respondent that they should move quickly to get a custody order and a restraining order in place while the mother was unable to care for the child.

Joyce Santero and Kurt Santero were further advised by the respondent that she would represent them in a child custody action if they paid her a retainer of $1500. No fee agreement and no billing statements

were received by the clients. The clients paid the respondent a retainer of $1500 on September 13, 1999 by check during their initial meeting with the respondent which lasted approximately an hour.

The check was negotiated by the respondent at Norwest Bank where she had a personal account on September 16, 1999. It is not clear from the bank records whether it was negotiated for cash or deposited into her personal account that day. There was a deposit into the respondent's personal account that day in the amount of $1572. Five days later on September 21, 1999 the account had a negative balance. The respondent had earned only a small portion of the funds for the one hour initial consultation she had had three days earlier with the clients at the time she exchanged the check for cash or deposited the check into her personal account. None of the clients' funds were deposited into a trust account. The respondent knew at the time she negotiated the check that she had not earned the entire fee but only a small portion of it.

On September 30, 1999, the clients met the respondent at the Jefferson County courthouse, as they had arranged to do. With the help of the respondent, the clients filled in a form verified complaint for a restraining order. The complaint was filed to protect the child from the mother who was neglectful and unable to appropriately care for the child, according to the allegations in the complaint. A temporary restraining order was entered that day and a return date was scheduled for October 21, 1999 at 8:30 a.m.

The clients were advised by the respondent that obtaining a restraining order was the first step in the process for permanent custody of the child. The respondent told them that they would be in a very strong position legally for custody of the child once the restraining order was entered on a permanent basis.

Prior to October 21, 1999, the respondent had advised the clients that the restraining order would be made permanent since the mother had told the respondent that she was not going to appear for the return date. The mother's failure to appear would most probably be interpreted by the court as a confession of the allegations in the complaint, according to the advice given the clients by the respondent.

On October 21, 1999, at the appointed time, Kurt Santero was present in the courtroom when the case, 99C11430, was called in the Jefferson County Court. The respondent was not present when the case was called and did not arrive until after the case was dismissed by the magistrate for failure to appear.

The respondent came to the courthouse late and she apologized to Mr. Santero for not being on time. The respondent told him that she would refile a complaint for a restraining order and that she would not charge the clients for any of her time required to get a permanent restraining order.

Ms. Santero's husband and Kurt Santero's father was dying of cancer so they did not follow up immediately with the respondent. The clients were told by the respondent that she would contact them to refile for the restraining order and to file the custody case.

Several months passed and the clients heard nothing from the respondent. Meanwhile, the mother surfaced and demanded the child back. Since there were no orders in place, Mr. Santero had no choice but to allow the mother time with the child.

Immediately upon the mother's reappearance, the clients attempted to contact the respondent. In March, 2000 Ms. Santero called the respondent's office repeatedly. She called on the 15th, 16th, 17th and 18th of March and was told by a secretary that the respondent was on the telephone and that she would have the respondent call her back right away. Ms. Santero never received a return call from the respondent. Ms. Santero called the respondent several more times. Finally, on March 24, 2000, a paralegal from the respondent's office called Ms. Santero back. Ms. Santero told the paralegal how upset she was the respondent had not returned any of her telephone calls. The paralegal gave Ms. Santero a new telephone number and address for the respondent but told

■■■■■■■■■      ■■■■■■■■■

Ms. Santero not to tell the respondent how she got that information.

Ms. Santero left numerous messages at the new telephone number requesting a call back but the respondent never called her back or contacted her or her son in anyway after the October 21, 1999 hearing date.

The respondent spent a maximum of five hours on the case including the one-hour initial consultation, travel time to the courthouse and two short appearances at the courthouse. The respondent's typical hourly rate was $150 per hour. After the October 21, 1999 court appearance, the respondent had earned a maximum of $750 of the $1500 retainer.

On April 25, 2000, the client still had had no communication from the respondent. Ms. Santero wrote a letter to the respondent on that date demanding the respondent refund the retainer of $1500 and the $30 filing fee that Ms. Santero had paid to file the initial complaint.

Ms. Santero's letter was sent certified mail to the respondent's registered business address and was received and signed for by the respondent's agent at her registered business address. The respondent knew upon receipt of the letter that she was no longer authorized to hold the balance of the retainer.

Over a year has passed and the Santeros have not received the retainer or filing fee back or any funds from the respondent. In fact, the respondent has had no communication with the Santeros even though they have requested that on numerous occasions since October 21, 1999. The respondent has abandoned the Santeros as clients and converted their money to her own personal use by cashing the check or depositing it into her personal account.

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM I

### [Colo. RPC 1.3 (a lawyer shall act with reasonable diligence and promptness) ]

Paragraphs 1 through 17 are incorporated herein.

The respondent neglected the clients' legal matter in violation of Colo. RPC 1.3 by appearing at the October 21, 1999 hearing so late and without any excuse that the complaint for a restraining order and the temporary order were dismissed by the magistrate.

The respondent neglected the clients' legal matter by not refiling the complaint for a restraining order, as she had promised to do, at no cost to the clients, in violation of Colo. RPC 1.3.

The respondent neglected the clients' legal matter by not filing a petition for custody of the child while the child was living with the clients or anytime thereafter in violation of Colo. RPC 1.3.

## CLAIM II

### [Colo. RPC 1.4(a) (a lawyer shall keep a client reasonably informed) (neglect and failure to communicate resulting in abandonment) ]

Paragraphs 1 through 21 are incorporated herein.

The respondent promised the clients that she would initiate the refiling of the complaint for the restraining order and that she would file a petition for custody. The respondent failed to communicate with the clients either by letter or telephone concerning these matters after the October 21, 1999 hearing date in violation of Colo. RPC 1.4(a).

The respondent failed to respond to numerous telephone messages and requests for return telephone calls from Ms. Santero in March 2000 or anytime thereafter in violation of Colo. RPC 1.4(a).

The respondent's neglect of the clients' legal matter coupled with her failure to communicate has resulted in abandonment of the clients.

## CLAIM III

### [Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation) ]

Paragraphs 1 through 25 are incorporated herein.

On September 16, 1999, the respondent knowingly converted the clients' funds by exchanging their check for cash or depositing their check into her personal checking account even though she had only earned a very small portion of the funds, having only done an hour's worth of work for the clients. Within five days after the check was negotiated, the respondent's personal account had a negative balance. The respondent clearly knew that she had not earned the funds on September 16, 1999 but she misappropriated those funds to her own personal use on that day without the authority of the client.

The clients demanded that respondent refund the retainer by certified letter at the respondent's registered business address. That letter was accepted by the respondent's agent.

The respondent never responded and never refunded any money to the clients. The respondent knowingly converted the unearned portion of the clients' retainer in violation of Colo. RPC 8.4(c).

The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5; and violates Colo. RPC 1.3, 1.4(a) and 8.4(c).

WHEREFORE, it is prayed that the respondent be found guilty of violations of various rules of conduct which establish grounds for discipline as provided in C.R.C.P. 251.5, and the Colorado Rules of Professional Conduct and that she be appropriately disciplined and assessed the costs of these proceedings.

## EXHIBIT 2

## AMENDED COMPLAINT

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251.9 through 251.14, and it is alleged as follows:

1. The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on April 30, 1992, and is registered upon the official records of this court, registration No. 21331. She is subject to the jurisdiction of this court in these disciplinary proceedings. The respondent's registered business address is 600 17th Street, Suite 950 South, Denver, Colorado 80202. The respondent's registered home address is 800 Ogden Street, Denver, Colorado 80218. The respondent's most recent address known to this office is 3127 W. 24th Avenue, Apartment 4, Denver, Colorado 80211–4649.

## GENERAL ALLEGATIONS

2. In May, 1999 Ms. Tammy Andrus hired respondent to represent her in some post decree dissolution matters. Respondent agreed to enter her appearance in the divorce case.

3. On June 28, 1999 in response to the respondent's motion, she was substituted by order of the court as attorney of record for the petitioner, Tammy Andrus, in case no. 98DR1789, *In re the Marriage of Andrus,* Arapahoe County District Court. A motion to modify parenting time which had been filed *pro se* by Ms. Andrus was pending in the case and had been ordered by the court to be set for trial.

4. Shortly thereafter, the respondent and the opposing counsel, who represented Mr. Andrus in the divorce case, agreed to the appointment of a special advocate and informed the court that they thought they could resolve the parenting time issue without a hearing.

5. The special advocate worked with the parties for many months to resolve the parenting issues. A stipulation resolving the parenting time issues that were pending was entered into by the parties, their counsel and the special advocate and made an order of the court on May 30, 2000.

6. Almost immediately, dispute arose between the parties as to the interpretation of the language of the order with respect to summer parenting time. Ms. Andrus attempted to reach the respondent many times by telephone. She left many messages for return calls. The respondent never returned any of her telephone calls after May 30, 2000.

7. During the summer, an emergency arose. Social services was investigating an incident of sexual abuse involving her son. Ms. Andrus attempted to reach the respondent on numerous occasions for advice. Ms.

Andrus left many messages and never received a return call from the respondent.

8. On August 24, 2000, the father, through his attorney, filed a motion regarding allocation of holiday parenting time and made allegations to the court that Ms. Andrus was denying him his parenting time. The motion alleged that numerous attempts were made to contact the respondent and that the father's counsel had left approximately twenty messages at the respondent's office in a two month period in an attempt to resolve the issue without litigation. After making so many attempts to reach the respondent that were unsuccessful, the father's attorney was left with no option but to file a motion with the court.

9. The father's motion was sent to respondent as attorney of record for Ms. Andrus. The respondent never forwarded the motion to Ms. Andrus nor did she file a response on behalf of Ms. Andrus. The respondent attempted to withdraw as petitioner's counsel by filing a motion with the court shortly after receiving the father's motion but her motion to withdraw was denied on September 28, 2000. Her motion to withdraw did not include her own address nor was the notification to all parties complete.

10. A telephone status conference on the father's motion was scheduled by the court for October 18, 2000 at 1:30 p.m. The court had earlier spent nearly two weeks attempting to reach the respondent to schedule the telephone conference in the matter. The respondent's telephone did not allow the court to leave messages. After numerous attempts to reach the respondent, the court was finally successful in reaching her. The respondent agreed to schedule the telephone status conference for that date. However, the respondent refused to give the court a current mailing address for her home or office.

11. On October 18, 2000 at the appointed time for the telephone hearing with the court, the court called the respondent. The respondent's telephone number was disconnected and the phone recording stated that no further information was available.

12. The respondent's client, Ms. Andrus, was not informed by the respondent of the pending motion or the scheduled telephone hearing. The court instructed the special advocate to contact Ms. Andrus regarding the pending motion and the scheduling of the motion for hearing.

13. A hearing on the merits of the father's motion to modify parenting time was scheduled by the court for November 18, 2000. Ms. Andrus was able to hire new counsel who was allowed to substitute in by the court without any action by the respondent. Ms. Andrus' substitute counsel contacted the father's counsel and the special advocate immediately to negotiate an agreement on the pending issues.

14. The parties and counsel were able to resolve the pending issues of the motion on the day it was scheduled to be heard by the court. The parties and counsel read an agreement into the record which was later reduced to writing and approved by the court. However, substantial additional attorneys fees were incurred by the client as a direct result of the respondent's conduct.

## CLAIM I

### [Colo. RPC 1.3 (Neglect Resulting in Abandonment of a Client) ]

15. Paragraphs 1 through 14 are incorporated herein.

16. The respondent neglected the legal matter entrusted to her by failing to respond to a motion filed against her client, by failing to return the telephone calls to opposing counsel, and by failing to appear at the scheduled telephone conference with the court in violation of Colo. RPC 1.3.

17. The respondent's neglect of the client's legal matter and failure to appear at a hearing coupled with respondent's failure to communicate results in abandonment of the client.

18. The respondent's conduct as referenced above resulted in numerous violations of Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM II

### [Colo. RPC 1.4(a) (Failure to Communicate Resulting in Abandonment) ]

19. Paragraphs 1 through 18 are incorporated herein.

20. The respondent failed to inform the client of the pending motion to modify parenting time in violation of Colo. RPC 1.4(a).

21. After May 30, 2000 the respondent failed to return telephone messages requesting return calls by her client in violation of Colo. RPC 1.4(a).

22. The respondent's failure to communicate coupled with her neglect of the client's matter resulted in abandonment of the client.

23. The respondent's conduct as referenced above resulted in multiple violations of Colo. RPC 1.4(a).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM III

### [Colo. RPC 1.16(d) (Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest) ]

24. Paragraphs 1 through 23 are incorporated herein.

25. The respondent failed to take any steps to protect the client's interest when she unilaterally terminated the client. Her failure to alert the client of the pending motion to modify parenting time and her failure to allow the client time for employment of other counsel are violations of Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM IV

### [Colo. RPC 8.1(b) (Failure to Respond to Disciplinary Authority) and C.R.C.P. 251.5(d) (Grounds for Discipline) ]

26. Paragraphs 1 through 25 are incorporated herein.

27. The requests for investigation filed by complainant Ms. Tammy Andrus and Attorney Regulation Committee were sent certified and regular mail to respondent.

28. The respondent has not filed a written response to either requests for investigation as required by C.R.C.P. 251.10(a).

29. The respondent has not responded in any manner to a lawful demand for information from a disciplinary authority during the investigation of this matter.

30. The respondent's failure to respond is a violation of Colo. RPC 8.1(b) and grounds for discipline pursuant to C.R.C.P. 251.5(d).

## CONCLUSION

The foregoing conduct of respondent establishes grounds for discipline as provided in C.R.C.P. 251.5; and violates Colo. RPC 1.3, Colo. RPC 1.4(a), Colo. RPC 1.16(d) and Colo. RPC 8.1(b).

WHEREFORE, it is prayed that the respondent be found guilty of violations of various rules of conduct which establish grounds for discipline as provided in C.R.C.P. 251.5, and the Colorado Rules of Professional Conduct and that she be appropriately disciplined and assessed the costs of these proceedings.