The PEOPLE of the State of Colorado, Petitioner,

v.

Thomas D. LENAHAN, Respondent.

Nos. 01PDJ017, 01PDJ054, 01PDJ060.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Aug. 9, 2002.

Lenahan, attorney registration number 25498, from the practice of law following a trial in this proceeding. Respondent was employed by eight separate clients to resolve their tax problems. The Hearing Board found that in seven separate cases, respondent accepted clients' funds, failed to perform the services he was hired to perform, and failed to refund the unearned portion of the funds to his clients while knowing that he had not performed the services for which he had been paid the funds. The Hearing Board found that respondent's conduct constituted seven separate violations of Colo. RPC 8.4(c). In each of the eight cases, respondent severely neglected the clients' matters over an extended period of time in violation of Colo. RPC 1.3. In seven of the eight cases, the extend of respondent's neglect rose to the level of abandonment. The Hearing Board found numerous additional violations beyond respondent's knowing conversion of client funds and abandonment of clients. Respondent was ordered to pay restitution and the costs of the disciplinary proceeding.

Opinion by Presiding Disciplinary Judge ROGER L. KEITHLEY and Hearing Board members, HENRY C. FREY and WILLIAM J. MARTINEZ, both members of the bar.

### REPORT, DECISION AND IMPOSITION OF SANCTION

*SANCTION IMPOSED:* ATTORNEY DISBARRED

A sanctions hearing pursuant to C.R.C.P. 251.15 was held on March 5, 2002, before the Hearing Board consisting of the Presiding Disciplinary Judge Roger L. Keithley ("PDJ") and two hearing board members, Henry C. Frey and William J. Martinez, both members of the bar. Terry Bernuth, Assistant Attorney Regulation Counsel, represented the People of the State of Colorado (the "People"). Thomas D. Lenahan ("Lenahan"), the respondent, appeared *pro se.*

This matter arises from three separate proceedings, Case No. 01PDJ017,[1] Case No.

Attorney Regulation. The Hearing Board disbarred Respondent Thomas D.

1. The People filed a Petition for Immediate Suspension in Case No. 01PDJ017 on February 27,

2001. On April 5, 2001, the Supreme Court

01PDJ054, and Case No. 01PDJ060, which were consolidated upon the People's motion on June 29, 2001.

In Case No. 01PDJ054, the People filed a Complaint, amended it on May 15, 2001, and filed a Proof of Service of the Amended Complaint on June 19, 2001. Service was proper pursuant to C.R.C.P. 251.32(b). Lenahan failed to file an Answer or otherwise respond. Upon the People's motion, the PDJ granted default as to the facts set forth in the Amended Complaint, and granted in part and denied in part default as to the violations set forth therein.[2]

The People filed a Complaint in Case No. 01PDJ060 on May 29, 2001. Service was proper pursuant to C.R.C.P. 251.32(b). Lenahan failed to file an Answer or otherwise respond to the Complaint. Upon the People's motion, the PDJ granted default as to the facts set forth in the Complaint, which were deemed admitted, and granted in part and denied in part default on the violations set forth therein. The People amended the Complaint, filed proof of proper service of the Amended Complaint pursuant to C.R.C.P. 251.32(b), and moved for default, which the PDJ granted on December 19, 2001, thereby establishing the rule violations alleged.

At the sanctions hearing, exhibits 1 through 14 were offered by the People and admitted into evidence. The People presented testimony from Dawn Petras, Brian Goodhead, Diane Kandt, James Topliss, Randy Perry, Richard Pfeifer, Michael Blanchette, and Thomas D. Lenahan, who also testified on his own behalf. The Hearing Board considered the testimony of the witnesses, the facts established by the entry of default, the exhibits admitted, and made the following findings of fact which were established by clear and convincing evidence.

## I. FINDINGS OF FACT

Thomas D. Lenahan has taken and subscribed to the oath of admission, was admit-

ted to the bar of the Supreme Court on May 10, 1995, and is registered upon the official records of this court, attorney registration number 25498. Lenahan is subject to the jurisdiction of this court pursuant to C.R.C.P. 251.1(b).

All factual allegations in the Complaints and Amended Complaints set forth below were deemed admitted by the entry of default, and are therefore established by clear and convincing evidence.

### Case No. 01PDJ054

### Claim One: the Perry Matter

On August 12, 1998, Jay and Randi Perry (the "Perrys") retained Lenahan to file an offer in compromise with the IRS to resolve a tax problem. The Perrys paid Lenahan $1,500 for his representation. When the Perrys continued to receive demand letters from the IRS after they retained Lenahan, he told them to disregard them and said he had spoken to someone at the IRS to resolve their tax problem. On February 24, 1999, the Perrys paid an additional $1,500 to Lenahan. A year after they had first contacted Lenahan, the Perrys were informed by the IRS that their assets could be seized due to their failure to resolve the pending taxes owed to the IRS. When the Perrys informed Lenahan what the IRS had said, he reprimanded them for talking directly to the IRS. In February 2000, the IRS told the Perrys that they intended to start collection proceedings against them unless an offer in compromise was received within forty-five days, and informed the Perrys that Lenahan had not contacted the IRS. After the Perrys demanded an explanation from Lenahan, he contacted the IRS, but did not file an offer in compromise. Thereafter, the Perrys heard nothing from Lenahan and, in April 2000, the IRS garnished the Perrys' bank account and seized $1,300. Since April 2000, the Perrys have had no communication from Lenahan despite their efforts to contact him. On October 25, 2000, the Perrys wrote to Lenahan

immediately suspended Lenahan's license to practice law.

2. The PDJ denied default on the alleged violation of Colo. RPC 8.4(c) in claim two, the Petras

Matter, arising from respondent's alleged utterance of a false statement, which was thereafter dismissed.

demanding that he return their $3,000. They have not received a refund.

### Claim II: the Petras Matter

Wayne Petras and his wife (the "Petrases") hired Lenahan in the summer of 1996 to resolve their state and federal tax problems and paid him $1,400, the amount he requested. Since 1996 the Petrases have left numerous messages for Lenahan, and he would occasionally over the years return their calls and state that he was working on their case. Lenahan did not negotiate an offer in compromise for the Petrases with the IRS or with the State of Colorado; in fact, he performed no legal work for them. In April 2000, the State of Colorado garnished the Petrases' bank account for non-payment of the taxes. Thereafter, the Petrases hired other counsel.

The last communication the Petrases had with Lenahan was in April 2000 following the garnishment of their bank account. They demanded a refund of the $1,400 they had paid him in 1996, and Lenahan stated he would refund the money. Thereafter, they never heard from him again and did not receive a refund. When the Petrases attempted to contact him, his telephone numbers had been disconnected. The Petrases terminated Lenahan's representation by letter dated October 26, 2000.

### Claim III: The Goodhead Matter

Brian Goodhead ("Goodhead"), who was suffering from chronic life-threatening conditions, wanted to resolve a tax problem before his demise. In June 1997, Goodhead met with Lenahan regarding the personal and business withholding taxes and penalties he owed the IRS. Goodhead and Lenahan entered into a contract for legal services. Lenahan stated to Goodhead that he would resolve the tax problem by negotiating an offer in compromise with the IRS in exchange for a fee of $2,400. Goodhead borrowed $2,400 from his life insurance policy and paid the full amount to Lenahan on June 24, 1997. Goodhead provided Lenahan with his original tax returns from 1985 through 1988.

Thereafter, Goodhead called Lenahan every few months to inquire about the status of his offer in compromise. Lenahan initially told Goodhead that the negotiation was progressing with the IRS, and later said that the offer in compromise was in "limbo" at the IRS due to a lawsuit. Goodhead repeatedly asked for copies of documents that Lenahan had provided to the IRS but never received them.

In late 1998, Lenahan told Goodhead that he had offered the IRS $4,000 to settle the tax matter but that the offer was still in limbo. Goodhead again asked for copies of documents but never received them. On March 10, 1999, Lenahan wrote to Goodhead stating that due to a recent tax reform, the IRS was increasing the percentage of offers in compromise it accepted. On March 28, 1999, Goodhead met with Lenahan's business partner who informed him that Lenahan had left his law practice and taken numerous client files with him. Goodhead made many attempts to find Lenahan without success; his telephone numbers had been disconnected and Lenahan had no current address.

On June 9, 2000, three years after Goodhead had paid the advance fee and after he had contacted the Office of Attorney Regulation Counsel, Lenahan called Goodhead and stated that he had filed an offer in compromise with the IRS but that another offer needed to be filed because of the change in tax law. Lenahan told Goodhead that if he filled out an offer in compromise he would earn the fee Goodhead had paid him. A few days later, Goodhead received an envelope in the mail from Lenahan which contained a blank offer in compromise form with no correspondence and no explanation.

On October 31, 2000, Goodhead demanded in writing that Lenahan provide him with an accounting and refund the money he was paid. Lenahan has never responded to Goodhead, has not provided an accounting, and has not provided a refund. Goodhead never received his original documents and file.

### Claim IV: The Kandt Matter

On August 6, 1998, Diane Kandt and her husband (the "Kandts") retained Lenahan to resolve a serious tax problem. They signed

a fee agreement and paid an initial $1,500 requested by Lenahan with the agreement to pay an additional $1,500 when Lenahan submitted the offer in compromise to the IRS. Thereafter, the Kandts attempted to contact Lenahan many times. On one occasion, Lenahan told the Kandts that he was talking to the IRS about their offer in compromise and that he had forwarded all the necessary documents to the IRS. The Kandts never received any copies of documents that indicated Lenahan had filed an offer in compromise with the IRS or had performed any other work. In September 1999, Lenahan told the Kandts that the IRS was temporarily not considering offers in compromise. Beginning in January 2000, the Kandts called Lenahan nearly every day for a period of several months, but Lenahan did not return their calls. The Kandts gave up trying to reach Lenahan and retained other counsel. They were informed by the IRS that Lenahan did not submit any documents on their behalf. Lenahan has not refunded the funds paid to him by the Kandts nor has he provided their file to them.

### Claim V: the Topliss Matter

James Topliss ("Topliss") hired Lenahan to resolve a tax dispute for him, and entered into a fee agreement on May 22, 1998. Lenahan requested and Topliss paid $1,500 for Lenahan's services the same day. Subsequent to their initial meeting, Topliss never received any telephone calls or correspondence from Lenahan. Both Topliss and his attorney wrote letters to Lenahan on three separate occasions requesting information regarding the status of the matter and demanding Lenahan refund his money. Lenahan did not respond, and has not refunded the client's funds.

### Claim VI: The Bullen Matter

Mr. Bullen ("Bullen") sought tax advice from Lenahan and his business associate. He signed a fee agreement and paid Lenahan $1,500 to resolve his tax problem. After meeting with Lenahan in June, 1998, Bullen has had no contact with Lenahan for over two years. Lenahan has not responded to Bullen's phone messages. Bullen entrusted Lenahan with original documents which have not been returned to him. On November 1, 2000, Bullen wrote to Lenahan and demanded an accounting, a refund of his $1,500 payment, and his documents. Lenahan has not returned the funds, has not provided an accounting and has not returned any of Bullen's original documents.

### Claim VII (sic VIII): the Blanchette Matter

Michael Blanchette ("Blanchette") hired Lenahan to resolve an income tax problem and executed a fee agreement with Lenahan. Lenahan requested and Blanchette paid $3,000 on September 28, 1998. After several months, when Blanchette called Lenahan to inquire about the status of his case, Lenahan told him that his case was on hold because the IRS was undergoing internal changes. In the spring of 1999, Lenahan told Blanchette that his offer in compromise had been submitted to the IRS and that Lenahan was waiting for a revenue officer to be assigned. At the time Lenahan uttered this statement it was false: he had not submitted the offer in compromise to the IRS.

In August 1999, Lenahan told Blanchette that he had a verbal acceptance of an offer in compromise from the IRS and that Blanchette would be contacted by the IRS in writing to confirm the offer. Lenahan's statement was false; at the time he uttered it he had not prepared or filed the offer in compromise nor did he have a verbal acceptance of the offer in compromise. When several months passed and Blanchette did not hear from the IRS, he questioned Lenahan, who told him that he had not heard from the IRS because the agent assigned to his case was on medical leave but that written confirmation and acceptance of his offer in compromise would be forthcoming. This was a false statement; at the time Lenahan uttered it he had not filed an offer in compromise with the IRS.

In December 1999, Blanchette contacted the IRS directly and was told that they had no file or pending offer in compromise. Blanchette confronted Lenahan with the information and Lenahan stated that he had submitted the documents but that the IRS

had lost the file. Blanchette asked for proof and Lenahan was unable to provide it. Blanchette threatened to sue Lenahan for his failure to perform the requested legal work. In December 1999, Lenahan requested Blanchette sign a form offer in compromise, and stated that he would submit the offer immediately. Lenahan submitted the offer in compromise to the IRS in December 1999. Blanchette spoke with Lenahan in February 2000 and thereafter Lenahan refused to take Blanchette's calls or communicate with him in any other manner.

### Case No. 01PDJ060

### The Pfeifer Matter

On July 20, 1998 Rick Pfeifer ("Pfeifer") retained Lenahan to resolve a tax problem arising from Pfeifer's failing to pay or being delinquent in paying income tax over a twenty year period. Lenahan advised Pfeifer that he could resolve the problem by preparing and negotiating offers in compromise with the Internal Revenue Service ("IRS") and with the state. Pfeifer signed a fee agreement which required a fee of $3,000 to perform the legal work, and paid $1,500 to Lenahan at the same time. The additional $1,500 was due when the offer in compromise was submitted to the tax authorities. Lenahan's hourly rate on the fee agreement was $145 per hour. Pfeifer gave Lenahan all of his tax records.

Thereafter, Pfeifer spoke to Lenahan twice. Both times, Lenahan told him that the IRS was in a lawsuit and was not processing offers in compromise. In early March 1999, Pfeifer received a letter from Lenahan which stated that all offers in compromise were in limbo with the IRS, that the IRS was only beginning to process them, and that Lenahan still had not prepared the offer in compromise for Pfeifer. After Pfeifer discussed the matter again with Lenahan at his office in March 1999, Pfeifer never heard from Lenahan again. Lenahan did not prepare the documents he had agreed to prepare in July 1998. Neither the IRS nor the state ever received any documentation from Lenahan, and the state pursued Pfeifer. When the state attempted to contact Lenahan, he was no longer at his business number.

Pfeifer attempted to contact Lenahan but has not been able to reach him. Lenahan continues to retain possession of Pfeifer's tax records and funds. Lenahan met with Pfeifer for a one hour initial consultation, prepared and sent him a letter to him and had two very short conversations with him. The total amount of work did not exceed three hours. Lenahan earned only $435 of the $1,500 paid to him. Pfeifer wrote to Lenahan and demanded a refund.

## II. CONCLUSIONS OF LAW

 The facts deemed admitted and the violations deemed established by the entry of default sustain a finding that in seven separate cases (Perry, Petras, Goodhead, Kandt, Topliss, Bullen and Pfeifer) Lenahan accepted clients' funds, failed to perform the services for which he was hired, and failed to refund the funds to the clients when they requested he do so. Lenahan's accepting the clients' funds, failing to perform the services he was hired to perform, failing to refund the unearned portion of the funds to his clients, while knowing that he had not performed the services for which the funds were paid is sufficient evidence to conclude that Lenahan knowingly converted his clients' funds in violation of Colo. RPC 8.4(c)(engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). *See People v. Varallo*, 913 P.2d 1, 11 (Colo.1996)(holding that knowing misappropriation ... consists simply of a lawyer taking a client's money entrusted to him, knowing that it is the client's money and knowing that the client has not authorized the taking, *citing In re Noonan*, 102 N.J. 157, 160, 506 A.2d 722 (1986)). *See also People v. Silvola*, 915 P.2d 1281, 1284 (Colo.1996)(finding that misconduct that occurred over an extended period of time must be deemed to be willful).

In the Petras matter, Lenahan represented to the client that he would return the funds paid to him, which was a false statement when uttered in violation of Colo. RPC 8.4(c)(engaging in conduct involving dishonesty, deceit, fraud or misrepresentation). In the Blanchette matter, Lenahan informed the

client that he had submitted an offer in compromise to the IRS when he had not, that the IRS had made a verbal acceptance of the offer when it did not, and that the delay in resolving the matter was due to the IRS having lost the client's file when in fact the IRS never acquired the file from Lenahan. Each of the statements were false when uttered and Lenahan knew them to be false, constituting three separate violations of Colo. RPC 8.4(c).

■ In each of the eight cases giving rise to this proceeding, Lenahan failed to communicate adequately with the clients despite the clients' repeated attempts to learn the status of their cases in violation of Colo. RPC 1.4(a)(an attorney shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information). In each of the eight cases, Lenahan severely neglected the clients' matters over an extended period of time in violation of Colo. RPC 1.3(an attorney shall act with reasonable diligence and promptness in representing a client). In seven of the eight cases (Perry, Petras, Goodhead, Kandt, Topliss, Bullen and Pfeifer) the extent of Lenahan's neglect rose to the level of abandonment. To find abandonment rather than merely neglect, there must be proof that the attorney—during a given time period—was required to accomplish specific professional tasks for the client, failed to accomplish those tasks, and failed to communicate with the client. *People v. Carvell,* No. 99PDJ096, slip op. at p. 9 (Colo. PDJ September 11, 2000), 2000 Colo. Discipl. LEXIS 26. The proof must objectively indicate that the attorney has deserted, rejected and/or relinquished the professional responsibilities owed to the client. *Id.* The totality of facts establish that Lenahan deserted, rejected and/or relinquished the professional responsibilities owed to theses seven clients and thereby abandoned them.

In six separate matters (Perry, Petras, Goodhead, Kandt, Bullen and Pfeifer) Lenahan failed to take steps reasonably necessary to protect the clients' interests by returning the files to the clients following their termination of his representation in violation of Colo. RPC 1.16(d)(an attorney shall, upon termination of representation, take steps to the extent reasonably practicable to protect a client's interests, including . . . refunding any advance payment of any fee not earned). In several cases, the documents Lenahan failed to return included original tax documents.

## III. IMPOSITION OF SANCTION

The seven incidents of knowing conversion are sufficient to warrant disbarment. *See Varallo,* 913 P.2d at 11. The sanction of disbarment is also warranted for knowing conversion coupled with the seven incidents of abandonment of clients. *See People v. Wallace,* 936 P.2d 1282, 1284 (Colo.1997) (disbarring lawyer who abandoned clients, causing them serious harm, and knowingly misappropriated client funds); *People v. Townshend,* 933 P.2d 1327, 1329 (Colo.1997)(lawyer disbarred who effectively abandoned two clients after accepting retainers and failing to account for or return the unearned retainers). *See also* ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") 4.11 ("[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client"); ABA *Standard* 4.41(b)(disbarment is warranted when a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client). The additional six incidents of Lenahan's violation of Colo. RPC 1.16(d) adds additional grounds for disbarment where, in the present case, Lenahan took possession of the original tax documents belonging to the clients and refused to return them after abandoning their legal matters. The withholding of the clients' original tax documentation evidences Lenahan's lack of professionalism. Lenahan exhibited no concern for the perilous position in which he placed his clients by failing to return critical documentation to them. Pursuant to ABA *Standards* 9.22 and 9.32 respectively, the Hearing Board considered aggravating and mitigating factors in arriving at the appropriate sanction. In mitigation, Lenahan has had no prior discipline. *See id.* at 9.32(a). Lenahan also presented testimony of developing chronic clinical depression and significant alcohol dependency, both of which may be

considered as mitigating factors pursuant to ABA *Standards* 9.32(i) (Supp.1992). However, the consideration of these conditions as mitigating factors has been confined to those situations where it is shown by medical evidence that the lawyer is affected by the disability, that the disability caused the misconduct, that the lawyer's recovery from the disorder is demonstrated by a meaningful period of successful rehabilitation, and that the recovery arrested the misconduct and its recurrence is unlikely. *In re Egbune* 971 P.2d 1065, 1073 (Colo.1999). Lenahan did not meet these requirements. Accordingly, neither Lenahan's claimed depression nor alcohol dependency cannot be considered by the Hearing Board as mitigating factors in arriving at the appropriate sanction. The facts deemed admitted in the Amended Complaints and Complaint in this consolidated matter establish several aggravating factors pursuant to ABA *Standard* 9.22. Lenahan had a dishonest or selfish motive, *see id.* at 9.22(b), he demonstrated a pattern of misconduct, *see id.* at 9.22(c); he engaged in multiple offenses, *see id,* at 9.22(d); he engaged in bad faith obstruction of the disciplinary proceeding, *see id.* at 9.22(e), and he demonstrated indifference to making restitution, *see id.* at 9.22(j). The Hearing Board noted that Lenahan's clients were vulnerable, most notably Mr. Goodhead, *see id.* at 9.22(h). At the conclusion of the hearing, Lenahan expressed remorse for his conduct and stated his belief that an order requiring him pay restitution to his clients was warranted.

### IV. ORDER

It is therefore ORDERED:

1. THOMAS D. LENAHAN attorney registration number 25498 is DIS-BARRED from the practice of law effective thirty-one days from the date of this Order.

2. Lenahan is ordered to pay restitution within one year of the date of this Order with interest at the statutory rate from the date of this Order to:

 A. Michael Blanchette in the amount of $3,000;

 B. Wayne Petras in the amount of $1,400;

 C. Diane Kandt in the amount of $1,500;

 D. Mr. Bullen in the amount of $1,500;

 E. The Client Protection Fund with regard to Brian Goodhead in the amount of $2,400;

 F. The Client Protection Fund with regard to James Topliss in the amount of $1,500;

 G. The Client Protection Fund with regard to Jay and Randi Perry in the amount of $3,000; and

 H. The Client Protection Fund with regard to Rick Pfeifer in the amount of $1,500.

3. Lenahan is Ordered to pay the costs of these proceedings; the People shall submit a Statement of Costs within ten (10) days of the date of this Order. Respondent shall have five (5) days thereafter to submit a response thereto.