The PEOPLE of the State of Colorado, Complainant,

v.

Lawrence R. ELLIOTT, Respondent.

No. 99PDJ059.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

March 1, 2000.

Opinion issued by Presiding Disciplinary Judge ROGER L. KEITHLEY and Hearing Board members DR. DAVID S. WAHL, a representative of the public, and RALPH G. TORRES, a member of the bar.

## OPINION AND ORDER IMPOSING SANCTIONS

*SANCTION IMPOSED: ATTORNEY DISBARRED*

This matter was heard on January 5, 2000, before the Presiding Disciplinary Judge ("PDJ") and two Hearing Board members,

Dr. David Wahl, a representative of the public, and Ralph G. Torres, a member of the bar. Gregory G. Sapakoff, Assistant Regulation Counsel, represented the People of the State of Colorado (the "People"). Respondent Lawrence R. Elliott ("Elliott"), did not appear either in person or by counsel.

The People filed the Complaint in Case No. 99PDJ059 on June 2, 1999 (the "Nealy matter"). The Complaint and Citation were served on Elliott by certified mail in compliance with C.R.C.P. 251.14(b), C.R.C.P. 251.32(b), and C.R.C.P. 227(2)(a) and (b) to both Elliott's registered home and business address. Elliott failed to answer the allegations advanced in the Complaint, and default was entered against him on September 21, 1999. The factual allegations set forth in the People's Complaint were deemed admitted, and the charges alleged established. At the sanctions hearing, the People withdrew the charge pursuant to Colo. RPC 1.15(a)(commingling of funds).

The People filed the Complaint in Case No. 99PDJ086 on July 21, 1999 (the "McWhorter matter"). The Complaint and Citation were served on Elliott by certified mail to Elliott's registered business address. Elliott failed to answer the allegations advanced in the Complaint, and default was entered against him on October 18, 1999. The factual allegations set forth in the People's Complaint were deemed admitted, and the charges alleged established. Upon the People's motion, these matters were consolidated on October 18, 1999.

At the sanctions hearing held January 5, 2000, the People offered Exhibits 1 and 2, which were admitted into evidence. The PDJ and Hearing Board considered the exhibits and the People's argument and made the following findings of fact which were established by clear and convincing evidence:

## I. FINDINGS OF FACT

Elliott has taken and subscribed the oath of admission, was admitted to the bar of the Colorado Supreme Court on January 25, 1996, and is registered upon the official records of the Court, attorney registration number 26556. Elliott is subject to the jurisdiction of this court pursuant to C.R.C.P. 251.1(b).

### A. The Nealy Matter

In the Nealy matter, Helen K. Nealy ("Nealy") retained Elliott to represent her in May 1997 in regard to a dispute concerning her purchase of a mobile home in Basalt, Colorado. Nealy paid Elliott $500.00 in May and $500.00 in June 1997 as a retainer for his services, which amounts were to include filing suit against the seller and the seller's broker in the transaction. Elliott served notice of intent to sue on the attorney for the broker. Subsequently, at Elliott's request, Nealy sent another $1,000.00 to Elliott to research and file the lawsuit. Two months later, Nealy received a copy of a draft Complaint which she corrected and returned to Elliott. Thereafter, Elliott informed Nealy that the broker had been served and the seller would soon be served. He also stated that the case would be completed by Labor Day of 1998. Elliott requested and Nealy paid an additional $199.00 as payment for the filing fee.

Since June 1998, when Nealy tendered her final payment, she has had no contact with Elliott despite having attempted to reach him through both regular and certified mail. Elliott's office telephone has been disconnected.

Contrary to his representations to her, Elliott never filed the lawsuit on Nealy's behalf. Nealy has never received a billing statement nor any accounting from Elliott indicating how he used the money she paid to him. Elliott never paid the filing fee for which he collected funds from his client.[1]

### B. The McWhorter Matter

In the McWhorter matter, Ted McWhorter ("McWhorter"), a principal in several corporations providing health care services, retained the respondent in approximately June 1998 to provide legal services in regard to disputes between the corporations and two former employees, Alexandra and Patrick

---

1. Based upon his conduct in the Nealy matter, Elliott was immediately suspended from the practice of law by the Colorado Supreme Court on May 28, 1999.

Piot (the "Piots"). In approximately October 1998, McWhorter retained Elliott to file suit against the Piots alleging that they had converted corporate funds. McWhorter and/or the corporate entities paid Elliott approximately $8,000 to handle the legal disputes. Elliott filed a complaint in Garfield County District Court on behalf of McWhorter and the corporations. Elliott arranged for service of a copy of the complaint on the Piots but failed to have a summons served upon them. The Piots' counsel moved to quash service of process, and although he received a copy of the motion, Elliott did not file a response. The court granted the Piots' motion to quash service of process. Elliott failed to take any further substantive steps to advance the case, and the case was ultimately dismissed for failure to prosecute.

In late 1998, the Piots filed their own lawsuit in Garfield County District Court naming McWhorter and three of his corporations as defendants, and asserting various employment related claims. McWhorter retained Elliott to represent him and the corporate entities. Elliott filed an answer and a counterclaim on behalf of McWhorter and the corporate defendants, but failed to serve a copy of the answer and counterclaim on the attorney representing the Piots, and the Piots filed for default judgment. The court directed Elliott to serve a copy of his answer and counterclaim on counsel for the Piots within ten days. Although aware of the court's order, Elliott failed to serve a copy of the answer and counterclaim upon the opposing party or their counsel. The court subsequently granted default judgment in favor of the Piots and against McWhorter and the corporate defendants in the amount of approximately $77,000.

McWhorter has been unable to communicate with Elliott since March 1999. When McWhorter last communicated with Elliott, Elliott represented to McWhorter that everything was "okay" in the litigation and that McWhorter should not worry. Elliott failed to advise McWhorter that a default judgment had been entered against him and the corporate defendants. McWhorter did not learn of the default judgment until one of the corporate bank accounts was garnished in May 1999. Upon learning of the default judgment, McWhorter attempted to contact Elliott both by telephone and in person, but was unable to do so because Elliott's telephone had been disconnected and he had vacated his residence and office.

## II. CONCLUSIONS OF LAW

Both the Nealy and the McWhorter matters involve common elements of misconduct. In each of these matters, Elliott entered into an attorney/client relationship, agreed to provide specific professional services, requested and received funds from the clients as consideration for those services, failed to provide the services and failed to protect his clients or to communicate with them regarding the matters he was handling for them.

In the Nealy matter, Elliott entered into an attorney/client relationship with Nealy and accepted fees to file a lawsuit on the client's behalf. Some eight months later, having accepted an additional sum, Elliott provided a draft complaint to his client, which she reviewed and sent back to him. Two months later, he represented to the client that he had served the defendant with a summons and complaint and that he would soon serve the other defendant. Elliott never filed the complaint with the court. Nealy attempted on several occasions to contact Elliott to determine the status of the case without success. Although a portion of the funds received by Elliott may have been consumed by the limited amount of services provided, it is uncontested that a portion of the funds received, the $199 designated for filing fees, was neither earned nor expended for its designated purpose by Elliott.

In the McWhorter matter, Elliott entered into an attorney/client relationship with McWhorter and accepted fees to file a lawsuit on behalf of McWhorter and several corporate entities. Although Elliott filed the lawsuit, he failed to properly serve the defendants, he failed to respond to the defendants' motion to quash service of process, and he failed to take any further substantive steps to advance the lawsuit. Elliott's neglect eventually resulted in the court issuing an order dismissing McWhorter's action for failure to prosecute.

Prior to the dismissal of McWhorter's case, McWhorter hired Elliott to represent him and the corporate entities in a separate suit in which they were named as defendants. Elliott filed an answer and counterclaim with the court, but failed to serve a copy on the plaintiffs. When the court ordered Elliott to serve a copy of the answer and counterclaim on the plaintiffs, Elliott failed to do so. As a direct result of Elliott's neglect, the court entered default judgment against McWhorter and the corporate entities in the approximate amount of $77,000. Elliott failed to inform his client of the entry of default judgment. Indeed, the last communication McWhorter received from Elliott indicated that everything was "okay" in the litigation and McWhorter should not worry.

In both matters, Elliott agreed to perform professional services for the client, he failed to perform the work requested, and he failed to communicate with his clients. Such misconduct constitutes separate violations of Colo. RPC 1.3 (neglect of a legal matter) and Colo. RPC 1.4(a)(failure to keep a client reasonably informed) in each matter. Elliott's failure to obey a court order in the McWhorter matter, which resulted in the court entering default judgment against Elliott's clients, constitutes a violation of RPC 3.4(c)(knowingly disobeying an obligation under the rules of a tribunal).

■ Taking into account the nature of professional services to be provided, neglect may justify a finding of abandonment under circumstances where an attorney neglects a client's matter and fails to communicate with the client. *People v. Hotle*, 35 P.3d 185, 188 (Colo.P.D.J.1999), 29 Colo. Law. 107, 108 (January, 2000).

In both the Nealy and McWhorter matters, Elliott agreed to initiate litigation to resolve client disputes. In the Nealy matter, although leading his client to believe he had done so, Elliott never commenced the case he agreed to file. Having created the false expectation that the case was proceeding and would soon be resolved, Elliott thereafter ceased communication with his client, moved from his office and home, disconnected his

phone service and avoided his client's requests for information. Elliott's misrepresentations to his client, combined with his failure to provide the services he had agreed to provide and his subsequent failure to communicate with the client, taken together, establishes serious neglect which justifies a finding of abandonment.

In the McWhorter matter, Elliott's neglect of his client's matter also rises to the level of abandonment. Although he initially filed a complaint in that action, he failed to properly serve the complaint with a summons and service was not effective. When the defect was brought to his attention through a Motion to Quash, Elliott did nothing and allowed his client's case to be dismissed through his neglect. Moreover, in a separate action involving the same client, Elliott ignored an order of court to serve an answer and counterclaim on opposing counsel and through his neglect allowed a default judgment to be entered against the client. Having earlier informed McWhorter that all was well in the litigation, Elliott failed to inform McWhorter of the entry of default judgment and thereafter avoided all communication with his client.

By abandoning his clients, Elliott terminated the attorney/client relationship and became obligated to account for and promptly refund any unearned fee. *See Hotle*, 35 P.3d at 189 29 Colo. Law. at 108; *People v. Pedersen*, 35 P.3d 173, 175 (Colo.P.D.J.1999), 28 Colo. Law. 134, 135 (November 1999). Elliott failed to do so in both matters. Elliott's effective termination of the attorney/client relationship by his abandonment of the clients triggered the mandatory provisions of Colo. RPC 1.16(d)(upon termination, an attorney shall take steps to the extent reasonably necessary to protect his client's interests and refund unearned fees). *See Hotle, supra.* Notwithstanding that obligation, Elliott failed to disclose the serious difficulties he had brought upon his clients, failed to take steps to protect his clients' interests, failed to return client documents, and failed to refund unearned fees. Elliott's failure to do so constitutes a violation of Colo. RPC 1.16(d).[2]

---

2. Colo. RPC 1.16(d) was a charged violation in

only the Nealy case, 99PDJ059. The violation of

■ In both matters, Elliott requested and received funds from his clients in advance for payment of his attorneys' fees and costs. In both cases, Elliott did preliminary work on the client matters and then failed to follow through. Elliott's minimal efforts in both the Nealy and McWhorter cases fall far short of the services he agreed to perform in return for the fees he received. Notwithstanding his clients' efforts to contact him and secure an accounting for the moneys paid in advance, Elliott neither accounted for the funds he received nor refunded the unearned portion of those funds to either client. Elliott's retention of unearned funds in both matters following his abandonment of his clients' cases constitutes an unauthorized act of dominion or control over funds belonging to his clients. Misappropriation of a client's funds includes "not only stealing, but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom." *People v. Varallo*, 913 P.2d 1, 11 (Colo.1996). Elliott's failure to provide the services for which the funds were tendered combined with his failure to either account for the funds or refund the unearned portion constitutes conversion and is a violation of Colo. RPC 8.4(c).[3]

Elliott has retained the Nealy funds for approximately one year and the McWhorter funds for approximately two years. Elliott's complete lack of communication with his clients and his failure to account for or return the unearned funds for an extended period of time, constitutes willful and knowing conduct. *See Hotle, supra, citing People v. Singer*, 897 P.2d 798, 801 (Colo.1995)(holding that extensive and prolonged neglect is considered willful misconduct); *People v. Silvola*, 915 P.2d 1281, 1284 (Colo.1996).

## II. SANCTIONS/IMPOSITION OF DISCIPLINE

■ The PDJ and Hearing Board found that Elliott's conduct constituted a violation of duties owed to the legal system, the profession and to the public. The ABA's *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") is the guiding authority for selecting the appropriate sanction to impose for lawyer misconduct.

ABA *Standard* 4.11 provides:

Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.

ABA *Standard* 4.41(a) provides:

Disbarment is generally appropriate when a lawyer abandons the practice and causes serious or potentially serious injury to a client.

ABA *Standard* 6.22 provides:

Suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding.

Elliott's conduct in the Nealy and McWhorter matters meet the criteria under ABA *Standards* 4.11 and 4.41(a). Elliott knowingly converted client funds and caused injury to McWhorter and potential injury to Nealy. Elliott's abandonment of the McWhorter matter involved serious injury to his client: the dismissal of one matter and the entry of default judgment in the amount of $77,000.00.

Elliott's failure to obey the court's order in the McWhorter matter would ordinarily be grounds for suspension under ABA *Standards* 6.22. In this case, however, this additional misconduct only reinforces the sanction of disbarment.

■ The case law is consistent with the ABA *Standards* in holding that disbarment is the presumed sanction for abandonment of a client coupled with knowing misappropriation of client funds. *People v. Righter*, 35 P.3d 159, 162–63 (Colo.P.D.J.1999), 28 COLO. LAW. 140, 141 (September, 1999)(disbarring attorney for agreeing to represent clients,

---

that rule is limited to Case No. 99PDJ059.

**3.** Elliott was also originally charged with a violation of Colo. RPC 1.5(charging an unreasonable fee) based upon the same facts relied upon by the

People to establish the conversion claim. The People withdrew the Colo. RPC 1.5 charge at the time of trial.

accepting funds from the clients but failing to pursue their legal matters, failing to communicate with them, and failing to return unearned fees); *People v. Skaalerud,* 963 P.2d 341, 344 (Colo.1998)(approving conditional admission of misconduct agreeing to disbarment where attorney misappropriated settlement proceeds from multiple clients and abandoned or failed to communicate with them); *People v. Holmes,* 951 P.2d 477, 479 (Colo.1998)(disbarring attorney, in part, for misappropriating fees and abandoning clients); *People v. McDowell,* 942 P.2d 486, 492 (Colo.1997)(holding that disbarment was the presumed sanction for knowing misappropriation of funds); *People v. Gilbert,* 921 P.2d 48, 50 (Colo.1996)(disbarring attorney in default proceedings where attorney converted client funds in conjunction with abandonment of practice).

The PDJ and Hearing Board considered aggravating and mitigating factors pursuant to ABA *Standards* 9.22. The People offered unrebutted evidence in aggravation that Elliott's conduct demonstrated a dishonest or selfish motive, *id.* at 9.22(b); he committed multiple offenses, *id.* at 9.22(d), and he failed to participate in this consolidated matter, *id.* at 9.22(e). In mitigation, the People stated that Elliott has no prior disciplinary record. *See* ABA *Standards* 9.32(a). The lack of prior discipline is insufficient mitigation to reduce the presumptive discipline.

### III.  ORDER

It is therefore ORDERED:

1.  Lawrence R. Elliott, registration number 26556, is DISBARRED from the practice of law effective thirty-one days from the date of this Order, and his name shall be stricken from the roll of attorneys licensed to practice law in this state.

2.  Prior to the submission of any Petition for Readmission pursuant to C.R.C.P. 251.29, Lawrence R. Elliott shall pay to Ms. Nealy the sum of $2,199.00, plus statutory interest from June 30, 1998, and Elliott shall pay to Mr. McWhorter the sum of $8,000.00, plus statutory interest from March 31, 1999.

3.  Elliott is ORDERED to pay the costs of these proceedings within sixty (60) days of the date of this Order.

4.  The People shall submit a Statement of Costs within ten (10) days of the date of this Order. Respondent shall have five (5) days thereafter to submit a response thereto.