The **PEOPLE** of the State of Colorado, Complainant,

v.

Rory **SEGAL**, Respondent.

No. 02PDJ028.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Dec. 31, 2002.

Opinion by a Hearing Board consisting of the Presiding Disciplinary Judge, ROGER L. KEITHLEY, and Hearing Board Members RALPH G. TORRES and EDWARD L. ZORN, both members of the Bar.

## REPORT, DECISION AND IMPOSITION OF SANCTION

### SANCTION IMPOSED: ATTORNEY DIS-BARRED

A Sanctions Hearing pursuant to C.R.C.P. 251.15(b) was held on October 16, 2002, before a Hearing Board consisting of the Presiding Disciplinary Judge ("PDJ") and two Hearing Board Members, Ralph G. Torres and Edward L. Zorn, both members of the bar. Kim E. Ikeler, Assistant Regulation Counsel, represented the People of the State of Colorado ("People"). Rory Segal ("Segal"), the respondent appeared *pro se.*

The People filed a Complaint in this matter on April 30, 2002. The Citation and Complaint were sent via regular and certified mail to the Segal on the same date. The People filed a Proof of Service of Citation and Complaint on June 5, 2002. The Proof of Service showed that Segal had received a certified mailing of the Citation and the Complaint at an address in California and that the certified mailing of the Citation and Complaint also had been received at one of Segal's Denver addresses. Segal failed to file an Answer or otherwise respond to the Complaint.

On June 26, 2002 the People moved for default on the claims set forth in the Complaint. On July 16, 2002 the PDJ granted the motion both as to the facts set forth in the Complaint and as to the claims alleged.

At the Sanctions Hearing, the People offered the testimony of Susan Lefebvre and exhibits 1 through 4, which were admitted into evidence. Segal provided testimony and argument regarding mitigation. The Hearing Board considered the parties' argument, the facts established by the entry of default, the testimony of the witness and the exhibits, and made the following findings of fact which were established by clear and convincing evidence.

### I. FINDINGS OF FACT

Segal has taken and subscribed to the oath of admission, was admitted to the bar of the Colorado Supreme Court on May 23, 1996 and is registered upon the official records of the Colorado Supreme Court, registration number 26867. Segal is subject to the jurisdiction of this Court pursuant to C.R.C.P. 251.1(b).

All factual allegations set forth in the Complaint were established by the entry of default by clear and convincing evidence. *See* the Complaint attached hereto as Exhibit "A." The entry of default also established the alleged violations of the Rules of Professional Conduct set forth therein.

### II. CONCLUSIONS OF LAW

The Complaint in the within matter alleges that Segal violated Colo. RPC 1.3(failure to act with reasonable diligence and promptness in representing a client and neglecting a legal matter) in claim one; Colo. RPC 1.4(a)(failure to communicate with the client and failure to explain a matter to the client so that the client can make informed decisions regarding the representation) in claim two; Colo. RPC 1.15(b)(failure to render a full accounting upon request by the client) in claim three; Colo. RPC 1.16(d)(failure to take steps to protect the client's interest upon termination of the representation in claim four); Colo. RPC 8.4(c)(engaging in conduct involving dishonesty, fraud, deceit or misrepresentation) in claim five; and Colo. RPC 8.1(b)(failure to respond to a lawful

demand for information from a disciplinary authority) constituting grounds for discipline pursuant to C.R.C.P. 251.5(d) in claim six.

■ On February 9, 2000, Segal commenced representation of Dominic Pacheco ("Pacheco") in an action styled *The People of the State of Colorado, Plaintiffs–Appellee v. Dominic Pacheco, Defendant–Appellant,* Colorado Court of Appeals, Case No. 99CA1884 ("the appeal"). Segal was retained by Susan Lefebvre ("Lefebvre"), Pacheco's mother, to handle Pacheco's appeal and related matters. After initially filing a response to a show cause order, Segal failed to prepare or file an opening brief, failed to move for an extension of time to file the brief, and failed to respond to a second show cause order requiring Pacheco to show cause why the appeal should not be dismissed with prejudice for failure to file an opening brief. The court dismissed the appeal because it had not received an answer to the show cause order. Segal failed to take any further action on behalf of his client to reinstate the appeal.

■ Segal entered into an attorney/client relationship with Pacheco, thereby forming an obligation to perform the agreed—upon professional services. By agreeing to perform the requested services, Segal inherently represented that he would provide the services in accordance with the Colorado Rules of Professional Conduct. Thereafter, without either his client's permission or an appropriate withdrawal from the attorney/client relationship, Segal failed to perform the agreed—upon professional services within a reasonable period of time, constituting neglect in violation of Colo. RPC 1.3. The extent of Segal's neglect, in light of the professional services to be provided, taken together with Segal's failure to communicate with the client justifies a finding of abandonment. To find abandonment rather than merely neglect, there must be proof that the attorney—during a given time period—was required to accomplish specific professional tasks for the client, failed to accomplish those tasks, and failed to communicate with the client. *People v. Lenahan,* 52 P.3d 247, 253 (Colo.O.P.D.J.2002). The proof must objectively indicate that the attorney has deserted, rejected and/or relinquished the professional responsibilities owed to the client. *Id.* The totality of facts establish that Segal deserted, rejected and/or relinquished the professional responsibilities owed to his client and thereby abandoned him.

■ Following his filing of one preliminary pleading with the court, Segal effectively abandoned his representation of Pacheco. Segal failed to give the client notice that he had abandoned their representation, failed to advise them to obtain other counsel, and otherwise failed to take steps to protect Pacheco's interest. In addition, Segal failed to return to the client any portion of the $1500 deposit, not all of which Segal had earned. By these acts and omissions, Segal violated Colo. RPC 1.16(d), which provides: "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect the client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned."

■ Segal failed to keep his client, Pacheco, reasonably informed about the status of the appeal, and failed to explain to Pacheco the ramifications of Segal's failure to file an opening brief, to seek extensions of time, to respond to the court's show cause order, to oppose dismissal or seek reconsideration of it, or file further pleadings in the appropriate court. By these acts and omissions, Segal violated Colo. RPC 1.4, which requires that a lawyer keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information, and explain a matter to the extent reasonably necessary to permit the client to make informed decisions about the representation.

■ Segal had been paid $1500 as a "down payment" for representing Pacheco. When Lefebvre was not able to communicate with Segal and when she discovered that he had not performed the work for which he was hired, Lefebvre requested that Segal provide an accounting of the $1500 and return the

funds to her. Segal failed to provide one and failed to return the unearned funds, thus violating Colo. RPC 1.15(b), which provides: "[u]pon receiving funds or other property in which a client ... has an interest, a lawyer shall ... deliver to the client ... any funds or other property that the client ... is entitled to receive and, upon request by the client or third person, render a full accounting regarding such property."

▇▇▇ By accepting the client's funds, failing to perform the services he was hired to perform, retaining the funds despite the client's demand that he return the unearned portion over a substantial period of time, Segal engaged in knowing conversion of the client's funds in violation of Colo. RPC 8.4(c)(it is professional misconduct for an attorney to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). *See People v. Elliott,* 39 P.3d 551 (Colo.O.P.D.J.2000)(disbarring attorney for his accepting advance fees from two clients, performing some but not all of the services for which he was paid, retaining the fees for one year in one matter and two years in another matter, and abandoning the clients, *citing People v. Singer,* 897 P.2d 798, 801 (Colo.1995)(holding that extensive and prolonged neglect is considered willful misconduct)); *People v. Silvola,* 915 P.2d 1281, 1284 (Colo.1996)(finding that misconduct that occurred over an extended period of time must be deemed to be willful). Misappropriation of a client's funds includes "not only stealing, but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom." *People v. Varallo,* 913 P.2d 1, 11 (Colo.1996).

▇▇▇ On August 9, 2001, the People sent to Segal via certified mail a Request for Investigation, requesting that he respond within twenty days. The letter was received by an individual at Segal's address of 1200 Madison, Suite 654, Denver, Colorado 80206, on August 10, 2001. Segal failed to file any response to the Request for Investigation, either within twenty days or thereafter. On September 10, 2001, the People wrote to Segal at several of his known addresses, requesting again that Segal respond to the Request for Information and stating that it was overdue. Segal still did not contact the Office of Attorney Regulation Counsel or otherwise respond to the Request for Investigation. In late 2001, the People located respondent at a new address, 8380 Miramar Mall, # 234, San Diego, California 92121. The People forwarded copies of documents related to the Complaint to Segal at this address. On January 16, 2002 and again on February 6, 2002, the People wrote to Segal again requesting that he respond to the Request for Investigation. Segal did not respond. On February 25, 2002, the People again wrote to Segal at the San Diego, California address, enclosing a proposed Report of Investigation, and requesting that Segal respond. He failed to do so. On March 11, 2002, the People wrote to Segal at the San Diego, California address listed above, stating that the matter would be proceeding to a formal Complaint. Segal did not respond.

By failing to respond to the Request for Investigation despite repeated attempts by the Office of Attorney Regulation Counsel to communicate with him, Segal violated Colo. RPC 8.1(b)(a lawyer shall not knowingly fail to respond reasonably to a lawful demand for information from a disciplinary authority) constituting grounds for discipline pursuant to C.R.C.P. 251.5(d)(failing to respond without cause shown to a request by the Regulation Counsel constitutes misconduct).

### III. IMPOSITION OF SANCTION

▇▇▇ Colorado law provides that in the absence of substantial mitigating factors, disbarment is the presumed sanction when an attorney knowingly misappropriates clients' funds. *Varallo,* 913 P.2d at 11 (attorney disbarred for violating the predecessor of Rule 8.4(c) when he used for his own purposes death benefit funds belonging to an estate). The presumed sanction for knowing conversion coupled with abandonment of an attorney's clients is disbarment. *See People v. Townshend,* 933 P.2d 1327, 1329 (Colo.1997)(lawyer disbarred when he effectively abandoned two clients after accepting retainers and failing to account for or return the unearned retainers); *People v. Jenks,* 910 P.2d 688, 692 (Colo.1996)(attorney disbarred

for accepting legal fees from a number of clients and then abandoning them); *People v. Tucker*, 904 P.2d 1321, 1325 (Colo.1995)(lawyer disbarred who abandoned clients while continuing to collect attorney fees for work that would not be performed); *People v. Fritsche*, 897 P.2d 805, 806–807 (Colo.1995)(lawyer who effectively abandoned clients and disregarded disciplinary proceedings disbarred); *People v. Ain*, 35 P.3d 734, 739 (Colo. PDJ 2001) (attorney disbarred for conduct including abandonment of a client matter and knowingly converting funds).

The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") are the guiding authority for selecting the appropriate sanction to impose for lawyer misconduct. ABA *Standard* 4.11 provides that "[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client."

ABA *Standard* 4.41(b) and (c) provide that disbarment is generally appropriate when:

(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to the client.

▇▇▇ In the present case, Segal knowingly converted funds belonging to his client and knowingly failed to perform the services he was engaged to perform. Knowing conversion alone warrants disbarment. *Varallo*, *supra*. Segal's neglect, failing to communicate, failing to provide an accounting, disregard of the legal needs of his clients, abandonment of his client, and Segal's failure to participate in these proceedings, confirms that disbarment is warranted. *See In the Matter of Stevenson*, 979 P.2d 1043, 1044 (Colo.1999) (attorney disbarred for having received payment of monies due to client, failing to deliver funds to client and failing to account for them); *In the Matter of Bilderback*, 971 P.2d 1061, 1063 (Colo.1999) (attorney disbarred for conduct including failing to

remit settlement funds to client); *People v. Skaalerud*, 963 P.2d 341, 342 (Colo.1998) (same); *People v. Ross*, 35 P.3d 522, 524–25 (Colo. PDJ 2000)(attorney disbarred for conduct including failing to inform a client that a case had been dismissed and failing to communicate with the client).

Pursuant to ABA *Standards* 9.22 to 9.32 respectively aggravating and mitigating factors must be considered in arriving at the appropriate sanction. The facts established by the entry of default reveal several aggravating factors pursuant to ABA *Standard* 9.22. Segal had a dishonest or selfish motive by accepting funds for a specific purpose, failing to perform the work and retaining the funds despite the client's request that he return the unearned portion, *see ABA Standard* 9.22(b). Segal failed to cooperate in the disciplinary proceeding with the exception of appearing at the Sanctions Hearing, *see id.* at 9.22(e), and he was indifferent to making restitution, *see id.* at 9.22(j). Although Segal expressed remorse and confirmed that he had the present ability to repay the $1,500 in the Pacheco matter, he has not made any attempt to repay the client.

Segal's client was vulnerable, an aggravating factor pursuant to ABA *Standards* 9.22(h). Pacheco was in prison at the time of Segal's representation. His mother raised the funds for Segal's "down payment" with great difficulty and has not been able to raise sufficient funds to hire a replacement attorney. Finally, Segal has had prior discipline, an aggravating factor under ABA *Standard.* 9.22(a). In February, 2002, Segal was suspended for eighteen months with eight months stayed followed by a one year period of probation subject to conditions.[1] *People v. Segal*, 40 P.3d 852 (Colo.O.P.D.J.2002). That case involved similar misconduct, neglect and failure to communicate, in addition to other violations.

In mitigation, Segal established that he was inexperienced in the practice of law, *see id.* at 9.32(f). At the time of these events, Segal had been licensed to practice law slightly over three years and had established his own practice after graduating from law

---

1. Segal stated that he did not send the notice required by C.R.C.P. 251.28(b) notifying Lefebvre

of his suspension, although he did send notice to Pacheco.

school. He had personal and emotional problems at the time, *see id.* at 9.32(c), and expressed remorse for his conduct, *see id.* at 9.32(*l* ). Although Segal did not fully participate in these disciplinary proceedings, he flew from California to represent himself at the Sanctions Hearing. The mitigating factors presented by Segal are insufficient to lessen the presumed sanction of disbarment for knowing conversion.

## IV. ORDER

It is therefore ORDERED:

1. RORY SEGAL, attorney registration 26867, is DISBARRED from the practice of law effective thirty-one days from the date of this order. His name shall be stricken from the roll of attorneys licensed to practice law in this state.

2. Segal is Ordered to pay restitution within one year of the date of this order to Susan Lefebvre in the amount of $1500, with interest at the statutory rate from October 16, 2002.

3. Segal is Ordered to pay the costs of these proceedings; the People shall submit a Statement of Costs within ten (10) days of the date of this Order. Segal shall have five (5) days thereafter to submit a response thereto.

## EXHIBIT A

### COMPLAINT

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251.9 through 251.14, and it is alleged as follows:

1. The respondent has taken and subscribed the oath of admission, was admitted to the bar of this Court on May 23, 1996, and is registered upon the official records of this Court, registration no. 26867. He is subject to the jurisdiction of this Court in these disciplinary proceedings. The respondent's registered business address is 8380 Miramar Mall, Suite 234, San Diego, California 92121. Other known addresses for respondent are 1200 Madison, Suite 654, Denver, Colorado 80206 and 1911 South Josephine, Denver, Colorado 80210.

## CLAIM I

**[Failing to act with reasonable diligence and promptness in representing a client and neglect of a legal matter-Colo. RPC 1.3]**

2. Rule 1.3, Colorado Rules of Professional Conduct, provides:

A lawyer shall act with reasonable diligence in representing a client. A lawyer shall not neglect a legal matter entrusted to that lawyer.

3. Respondent failed to act with reasonable diligence, and neglected matters entrusted to him, during his representation of Dominic Pacheco ("Pacheco") in an action styled *The People of the State of Colorado, plaintiffs-appellee, v. Dominic Pacheco, defendant-appellant,* Colorado Court of Appeals, Case No. 99CA1884 (the "appeal"), an appeal from a judgment of conviction entered in Adams County District Court, Case No. 98CR2217 (the "trial court action"). The facts are as follows.

4. Pacheco was convicted on April 27, 1999 of multiple counts of kidnapping, menacing, assault and domestic violence. He was sentenced on June 30, 1999 to sixteen years in prison.

5. On September 21, 1999, from prison, Pacheco, acting *pro se* filed a notice of appeal. At about the same time he filed a motion for leave to proceed *in forma pauperis* in the trial court action. He also filed a motion to appoint private counsel, arguing that he had a conflict of interest with the public defender's office.

6. On November 18, 1999, the Court of Appeals issued a show cause order, noting that Pacheco had failed to attach to his notice of appeal a final appealable order. The Court of Appeals gave Pacheco fourteen days to respond. It is not clear whether Pacheco received the show cause order.

7. On February 9, 2000, Pacheco's mother, Susan Lefebvre ("Lefebvre"), retained respondent to handle Pacheco's appeal and related matters. She paid respondent a retainer of $1500.00. Respondent wrote in hand a receipt which states:

Rory Segal received $1500.00 this 9th day of February, from Susan Lefebvre, as down payment for representation on appeal of Adams County District, Case No. 99CA1884; to fully investigate, formulate issues on appeal, and perform all appropriate actions in furtherance of the client's (Dominic Pacheco) rights and interests— [signed] Rory Segal

Upon information and belief, respondent prepared no retainer agreement for this engagement other than the above-recited receipt.

8. On February 23, 2000, respondent filed in the appeal a response to show cause order. In his pleading, respondent entered his appearance on Pacheco's behalf. Respondent attached a copy of the judgment of conviction, which apparently had not previously been provided to the Court of Appeals. Based on having provided a final appealable order to the court, respondent requested that the show cause order be discharged. The Court of Appeals discharged the show cause order on February 28, 2000.

9. On March 1, 2000, the Court of Appeals issued its notice of filing of record on appeal and briefing schedule. Copies were mailed to counsel of record including respondent. The Court of Appeals set the deadline for the filing of appellant's opening brief for April 10, 2000.

10. Upon information and belief, respondent failed to act with reasonable diligence to prepare the opening brief, in that respondent neglected to review the record on appeal, neglected to consult with his client, Pacheco, neglected to conduct appropriate legal research, and neglected to prepare and file the opening brief by the April 10, 2000 deadline. On May 8, 2000, the Court of Appeals entered a second show cause order. The Court stated:

From a review of the file, it appears that the opening brief was due April 10, 2000, but that it has not been filed.

IT IS THEREFORE ORDERED that appellant shall show cause, if any there is in writing within fourteen days, why this appeal should not be dismissed with prejudice for failure to file an opening brief.

A copy of this show cause order was mailed to counsel of record, including respondent, on May 8, 2000.

11. Respondent failed to act with reasonable diligence to respond, and neglected to respond, to the May 8, 2000 show cause order. In addition, respondent neglected to file a motion with the Court of Appeals seeking to extend the time for filing the opening brief. On June 19, 2000 the Court of Appeals dismissed the appeal because it had received no answer to the show cause order. Copies of the order dismissing the appeal were mailed to all counsel, including respondent.

12. Respondent failed to act with reasonable diligence to respond to the dismissal. Respondent neglected to file a motion seeking reconsideration or to take other action directed toward reinstating the appeal. Respondent further failed and neglected to inform his client, Pacheco, of the event.

13. During the spring of 2000, respondent spoke a few times with Pacheco's mother, Lefebvre. Beginning in early June, 2000, Lefebvre made numerous attempts to contact respondent by telephone, leaving messages on respondent's voice mail. She had no success in reaching him. Nor did respondent call her.

14. On August 7, 2000, the Court of Appeals issued its mandate dismissing the appeal, copies of which were mailed to counsel of record including respondent.[2] Respondent failed to act with reasonable diligence, and neglected to respond, to the mandate. Respondent failed to seek reversal of the mandate, or to otherwise take action to reverse the dismissal. Respondent further failed to notify his client of any of these events.

15. Rule 35(b), Colorado Rules of Criminal Procedure, provides that a court may

2. The Colorado Court of Appeals register of actions contains notations that on May 15, 2000, June 23, 2000 and August 11, 2000, mailings sent to respondent were returned marked "moved, left no forwarding address". Respondent never provided a different address to the Court of Appeals.

reduce the sentence imposed by a judgment of conviction if a motion for reduction of the sentence is filed within 120 days after the receipt by the court of a remittitur issued upon dismissal of an appeal. Because the mandate was issued by the Court of Appeals on August 7, 2000, the deadline to file a motion under Rule 35(b) was November 5, 2000.

16. Respondent failed to act with reasonable diligence to inform Lefebvre or Pacheco of the opportunity to file a Rule 35(b) motion or that the deadline to do so was November 5, 2000. Respondent further failed to act with reasonable diligence to prepare such a motion and to gather information and documents in support of such a motion.

17. In January, 2001, after unsuccessfully attempting for months to contact respondent, Lefebvre called the Office of Attorney Regulation Counsel and learned that she could contact the Court of Appeals to inform herself concerning the status of her son's case. Lefebvre called the Court of Appeals and was told that the appeal had been dismissed in June, 2000 and that the record on appeal had been returned to the district court in August, 2000.

18. In February, 2001, Lefebvre again attempted to contact respondent. Lefebvre left respondent a message telling him that Lefebvre had learned Pacheco's appeal had been dismissed and that she was quite upset.

19. Respondent called Lefebvre back. Upon information and belief, respondent also contacted the Court of Appeals to obtain a copy of the order dismissing the appeal. After respondent confirmed that the appeal had been dismissed, he attempted to minimize his neglect by telling Lefebvre, "Well, we knew that wouldn't fly."

20. During the week of February 12, 2001, respondent conferred with Lefebvre. Lefebvre understood that respondent's continued assistance was consistent with her retention of him, which had been for the purpose not only of prosecuting Pacheco's appeal but also performing any other appropriate actions in furtherance of Pacheco's

rights and interests. In what Lefebvre understood to be an effort to achieve this purpose, Segal and Lefebvre discussed filing a "motion for reconsideration" in the trial court action.[3] Respondent scheduled a telephone conference between respondent, Lefebvre and Pacheco for the evening of February 21, 2001. During this call, respondent neglected to inform his client that the deadline for filing a motion under Rule 35(b) had passed.

21. Following the three-way call, respondent spoke to Lefebvre about exhibits respondent claimed were necessary for filing a motion to seek a reduction in Pacheco's sentence. These included letters from friends and victims as well as a letter from Pacheco himself concerning his good conduct while in prison.

22. Lefebvre endeavored to obtain the letters respondent had requested. In mid-March, 2001, respondent visited Lefebvre and picked up the letters which Lefebvre had obtained to date. Respondent reviewed Pacheco's letter and opined it needed revisions. Respondent did not tell Lefebvre that the deadline to file a Rule 35(b) motion had passed.

23. In early April, 2001, Lefebvre contacted respondent by phone. Respondent was in California. Lefebvre told respondent she had obtained an additional letter for use as an exhibit to the motion for reconsideration. Respondent gave Lefebvre a fax number to which she could transmit this. Respondent further told Lefebvre that he would be working on the motion while in California. Lefebvre tele-copied the remaining letter to respondent and contacted him via e-mail to confirm his receipt.

24. On May 1, 2001, respondent sent Lefebvre via e-mail revisions to Pacheco's letter. Lefebvre made some additional revisions and returned it via e-mail to respondent. Respondent told Lefebvre by phone that respondent would come by to pick up additional documents Lefebvre had received. Respondent did not disclose that the time to file a Rule 35(b) motion had expired months before.

---

3. Respondent did not mention Rule 35(b), C.R.Crim.P.; however, it was to this Rule respondent was alluding, because he told respondent that the motion would request a reduction in Pacheco's sentence based upon his good behavior.

25. Respondent never appeared for this appointment. Later, Lefebvre learned respondent was having transportation problems and offered to assist him. Respondent told Lefebvre that, if he needed transportation, he would call Lefebvre.

26. Lefebvre never heard from respondent again. Upon information and belief, respondent never contacted Pacheco after this. Respondent failed to file the motion for reconsideration in the trial court action. In short, respondent failed and neglected to take any further action on the case.

27. On June 29, 2001, Lefebvre wrote to respondent, again asking him to contact her. Lefebvre further requested that, if respondent was unable to file the motion for reconsideration, that respondent return to Lefebvre the letters written by family and friends on Pacheco's behalf. Respondent never responded, and never returned the letters.

28. From the foregoing, respondent failed to act with reasonable diligence and promptness in representing Pacheco in the appeal and in the trial court action. Instead, he neglected to file the opening brief, to respond to the Court of Appeals' show cause order, to seek extensions of time, and to file the motion for reduction of sentence in the trial court action. As a result of his neglect, Pacheco has been damaged, by losing his rights of appeal and by losing his right to seek a reduction of sentence. Based on the foregoing, respondent should be subjected to discipline, as provided in C.R.C.P. 251.5, for violation of Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM II

[Failure to keep the client reasonably informed about the status of the matter and to promptly comply with reasonable requests for information; failure to explain a matter to the extent necessary to permit the client to make informed decisions regarding the representation-Colo. RPC 1.4]

29. Paragraphs 1 through 28 are incorporated herein.

30. Rule 1.4(a), Colorado Rules of Professional Conduct, provides: "A lawyer shall keep a client reasonably informed about the status of the matter and promptly comply with reasonable requests for information."

31. Rule 1.4(b), Colorado Rules of Professional Conduct, provides: "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

32. Respondent failed to keep his client, Pacheco, reasonably informed about the status of the appeal, either by communicating with Pacheco directly or through his mother, Lefebvre. Respondent further failed to explain to Pacheco, either directly or through his mother, the ramifications of respondent's failure to file an opening brief, to seek extensions of time to do so, to respond to the Court of Appeals' show cause order, to oppose dismissal or seek reconsideration of it, and to move to reduce Pacheco's sentence in the trial court action. As a result of respondent's failures to explain these matters, Pacheco did not have the information necessary to permit him to make informed decisions regarding respondent's representation. The facts are as follows.

33. As discussed above, the Court of Appeals set the deadline for filing of the opening brief for April 10, 2000. Although respondent spoke with Lefebvre several times during spring, 2000, respondent did not inform Lefebvre that he had failed and neglected to review the record on appeal, to consult with Pacheco, to conduct appropriate legal research, and to prepare and file the opening brief by the April 10, 2000 deadline. Nor did respondent explain to Lefebvre or Pacheco the consequences which could result from respondent's failure to act with reasonable diligence in this regard.

34. Beginning in early June, 2000, Lefebvre made numerous attempts to contact respondent by telephone. Lefebvre called respondent on June 6, 7, 8, 14, 15, 16, 19, and

27. She left messages, but received no response. Lefebvre continued to call during the month of July, on July 5, 11 and 19. Respondent did not return these calls either. Lefebvre did not call respondent during the months of August and September, on the assumption that respondent had not called her because he was awaiting developments in the Court of Appeals. Lefebvre again attempted to contact respondent on October 9, 19 and 30. She also called on November 10 and 24. She likely also called respondent during the month of December, 2000. Respondent answered none of these calls. Nor did respondent otherwise attempt to contact Lefebvre during months of June through December, 2000. Upon information and belief, respondent also did not attempt to contact Pacheco during this time period.

35. During the months of June through December, 2000, respondent made no effort to explain to Pacheco or Lefebvre the facts that he had failed to file the opening brief, that he had failed to respond to the Court of Appeals' show cause order, that the appeal had been dismissed, that the mandate had entered, and that the deadline to file a motion under Rule 35(b), C.R.Crim.P., was November 5, 2000. Respondent further failed to explain to Pacheco or Lefebvre the consequences of these events.

36. In February, 2001, Lefebvre again attempted to contact respondent. Lefebvre left respondent a message telling him that she had learned Pacheco's appeal had been dismissed and that she was quite upset as a result.

37. Respondent called Lefebvre back. During the week of February 12, 2001, respondent conferred with Lefebvre and discussed filing a motion for reconsideration in the trial court action.[4] Respondent scheduled a telephone conference between respondent, Lefebvre and Pacheco for the evening of February 21, 2001. Following the three-way call, respondent spoke to Lefebvre about exhibits respondent claimed were necessary for filing a motion for reconsideration. These included letters from friends and victims as well as a letter from Pacheco himself concerning his good conduct while in prison. Respondent did not explain that the deadline for filing a Rule 35(b) motion had passed.

38. Over the next few weeks Lefebvre endeavored to obtain the letters respondent had requested. In mid-March, 2001, respondent, visited Lefebvre and picked up the letters which Lefebvre had obtained to date. Respondent suggested making revisions to Pacheco's letter. Respondent did not tell Lefebvre the time to file a motion for reduction of sentence had expired.

39. On April 4, 2001, Lefebvre called respondent on his cell phone. Respondent was in California. Lefebvre told respondent she had obtained an additional letter for use as an exhibit to the motion for reconsideration. Respondent told Lefebvre he would be working on the motion while out of state. Respondent gave Lefebvre a fax number to which she could transmit the additional letter which Lefebvre had obtained. Respondent also gave Lefebvre an e-mail address at which to correspond with him.

40. During April, 2001, Lefebvre and respondent exchanged several e-mails, mostly concerning respondent's schedule. On May 1, 2001, respondent sent Lefebvre via e-mail revisions to Pacheco's letter. Lefebvre made some additional revisions and returned it via e-mail to respondent. Respondent told Lefebvre by phone that respondent would come to Lefebvre's house to pick up additional documents Lefebvre had received.

41. Respondent never appeared for this appointment. Later, Lefebvre learned respondent was having transportation problems. She offered to assist him. Respondent told Lefebvre that, if he needed transportation, he would call her. Lefebvre never heard from respondent again. Upon

---

4. As discussed above, although respondent did not make specific mention of Rule 35(b), C.R.Crim.P., it appears from the context of respondent's discussions with Lefebvre that respondent meant a motion for reduction of sentence pursuant to the Rule. Respondent explained to Lefebvre that, at the time of sentencing, the trial court judge was bound by the statute to sentence Pacheco to sixteen years in prison. But, respondent further represented that, following the appeal, the trial court now had the power to reduce the sentence if Pacheco had proved himself to be on the path to rehabilitation while in prison.

information and belief, respondent never contacted Pacheco either after this point.

42. By failing to thereafter communicate with Lefebvre or Pacheco, respondent failed to keep them informed about the status of mattes in the trial court action and failed to respond promptly to Lefebvre's request for information about the motion for reconsideration. Respondent further failed to explain his inaction concerning the motion for reconsideration to the extent necessary to permit Lefebvre and her son Pacheco to make an informed decision about respondent's representation of Pacheco.

43. After numerous attempts to contact respondent, Lefebvre called the clerk of the Adams County District Court and learned that the motion for reconsideration had never been filed. Lefebvre then sent respondent a certified letter requesting that respondent contact her. She still received no response.

44. From the foregoing, respondent failed to keep Pacheco and his mother reasonably informed about the status of both the appeal and the trial court action. Respondent further failed to comply with Lefebvre's many requests for information made on behalf of her son. Respondent further failed to explain to either Lefebvre or Pacheco respondent's failure to file the opening brief, to respond to the Court of Appeals' show cause order, to seek extensions of time, to take steps to reverse the Court of Appeals' dismissal of the appeal, and to file a motion for reduction of sentence in the trial court action. Respondent's failures in this regard prevented Lefebvre and her son, respondent's client, for making informed decisions concerning respondent's representation.

45. As a result of respondent's failure and refusal to adequately communicate with his client, Pacheco, and Pacheco's mother, Lefebvre, Pacheco has been damaged by losing his rights on appeal and by losing the opportunity for relief in the trial court action.

46. Based on the foregoing, respondent should be subjected to discipline, as provided in C.R.C.P. 251.5, for violation of Colo. RPC 1.4.

WHEREFORE, the complainant prays at the conclusion hereof.

## II. CLAIM III

[**Failure to render a full accounting regarding property of another held by the lawyer, upon request-Colo. RPC 1.15(b)** ]

47. Paragraphs 1 through 46 are incorporated herein.

48. Rule 1.15(b), Colorado Rules of Professional Conduct, provides: "Upon receiving funds or other property in which a client or third person has a interest, a lawyer shall, promptly or otherwise as permitted by law or by agreement with the client, deliver to the client or the third person any funds or other property that the client or third person is entitled to receive and upon request by the client or third person, render a full accounting regarding such property."

49. Respondent failed to deliver to Lefebvre monies to which she was entitled, to wit, the $1,500 which Lefebvre deposited with respondent at the commencement of respondent's purported representation. Lefebvre was due a return of those monies because respondent failed to do any meaningful work on Pacheco's behalf and, in fact, seriously damaged Pacheco's legal rights through respondent's neglect. Respondent also failed to provide Lefebvre with an accounting which she requested of the funds. The facts are as follows.

50. As discussed above, on February 9, 2000, Lefebvre paid respondent $1,500 as a "down payment" for representing her son, Pacheco, in his appeal. Respondent promised "to fully investigate, formulate issues on appeal and perform all appropriate actions in furtherance of the client's (Dominic Pacheco) rights and interest".

51. However, respondent did little to assist Pacheco. Other than filing a response to the Court of Appeals' show cause order, respondent entirely abandoned his obligation to represent Pacheco in the appeal, including by failing to review the record on appeal, to conduct legal research, to prepare and file the opening brief, to respond to the Court of Appeals' second show cause order, to oppose

the dismissal, and to keep Pacheco, the client and his mother informed of these events.

52. Respondent also failed to assist Pacheco in the trial court action. Respondent neglected to inform Pacheco of his right to file a Rule 35(b), C.R.Crim.P. motion within 120 days of the Court of Appeals' mandate. And, respondent failed to take any steps toward the filing of such a motion himself, until the time within which to do so had long since passed.

53. Because of these failures to act with reasonable diligence, and because respondent's neglect resulted in Pacheco losing his right of appeal and right to have the trial court reduce the sentence, respondent earned none of the $1500 deposit. As a result, respondent was obligated to return those funds to Lefebvre. But, respondent has never done so.

54. Lefebvre requested an accounting from respondent of the $1,500, but respondent failed to provide one.

55. From the foregoing respondent failed to tender to Lefebvre funds to which she was due and refused to provide to Lefebvre an accounting of her funds. This resulted in damage to Lefebvre in the amount of at least $1500. Based on the foregoing, respondent should be subjected to discipline, as provided in C.R.C.P. 251.5, for violation of Colo. RPC 1.15(b).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM IV

[Failure to take steps to protect a client's interest upon termination of the representation-Colo. RPC 1.16(d) ]

56. Paragraphs 1 through 55 are incorporated herein.

57. Rule 1.16(d), Colorado Rules of Professional Conduct provides: "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect the client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned."

58. When a lawyer enters into an attorney/client relationship with another, an obligation to perform the agreed-upon professional services arises. By agreeing to perform the requested services, the lawyer represents that he will provide the services in accordance with the Colorado Rules of Professional Conduct. If the attorney thereafter, absent either his client's permission or an appropriate withdrawal from the attorney/client relationship, fails to perform the agreed-upon professional services within a reasonable period of time, the attorney's misconduct constitutes neglect. Under circumstances where the period of neglect, in light of the professional services to be provided, is accompanied by a failure to communicate with the client, the neglectful conduct may justify a finding of abandonment. *People v. Hotle*, 35 P.3d 185, 188–89 (Colo.O.P.D.J.1999). Such as the case here.

59. Following his filing of the response to show cause order in February, 2000, respondent effectively abandoned his representation of Pacheco. Respondent failed to review the record on appeal, to consult with Pacheco, to conduct appropriate legal research, to prepare and file the opening brief, to respond to the Court of Appeals' second show cause order, to seek extensions of time, to take steps to avoid dismissal, to seek reconsideration of dismissal or to seek a reduction of Pacheco's sentence. Respondent failed to give Pacheco or Lefebvre notice that he had abandoned their representation, failed to advise them to obtain other counsel or to assist them in obtaining other counsel, and otherwise fail to take steps to protect Pacheco's interest. In addition, respondent failed to return to Lefebvre her $1500 deposit which respondent had not earned.

60. After having abandoned his representation of Pacheco in the appeal, and after having ignored Lefebvre's calls for eight months, respondent resumed communications with Lefebvre in February, 20001. Respondent made some desultory attempts to prepare to file a motion for reconsideration in the trial court action (a motion which in any

event already was time-barred). However, after early May, 2001, respondent abandoned this representation as well.

61. As with his abandonment of the appeal, after respondent again abandoned Pacheco in May, 2001, respondent failed to take steps reasonably practical to protect Pacheco's interest. Respondent failed to give Pacheco notice of his abandonment, failed to advise Pacheco to obtain other counsel, failed to assist Pacheco in doing so, and failed to refund to Lefebvre the fees which respondent had not earned.

62. Based on the foregoing, respondent failed to take the steps necessary to protect Pacheco's interest following respondent's abandonment of Pacheco's appeal and Pacheco's efforts to seek relief in the trial court action. As a result of respondent's neglect, Pacheco has been damaged by losing his rights of appeal and by losing his right to seek a reduction of his sentence from the trial court. Based on the foregoing, respondent should be subjected to discipline, as provided in C.R.C.P. 251.5, for violation of Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM V

### [Engaging in conduct involving dishonesty, fraud, deceit or misrepresentation-Colo. RPC 8.4(c) ]

63. Paragraphs 1 through 61 are incorporated herein.

64. Rule 8.4(c), Colorado Rules of Professional Conduct, provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

65. Respondent engaged in dishonesty, fraud, deceit and misrepresentation during the course of his representation of Pacheco in the appeal and in the trial court action. The facts are as follows.

66. As discussed above, respondent took from Lefebvre a "down payment" of $1500 for work to be done representing Pacheco in the appeal. Respondent performed almost no work in that regard, other than filing a response to the Court of Appeals' show cause order. As discussed in more detail above, respondent failed to file the opening brief, and failed to take any other action in the appeal, with the result that the appeal was dismissed.

67. Notwithstanding respondent having done no work to earn the $1500 paid to him by Lefebvre, respondent kept the $1500 and failed and refused to return it. Upon information and belief, respondent knowingly converted these funds to his own use.

68. Respondent's dishonest intent was confirmed during spring, 2001, when respondent pretended to assist Pacheco in filing a "motion for reconsideration" with the trial court. Respondent engaged in communications with Lefebvre for the purported purpose of preparing a motion for reconsideration, but the circumstances (including the fact that the deadline to do so already had passed) show that respondent never intended to file such a motion.

69. From the foregoing, respondent engaged in dishonesty, fraud, deceit and misrepresentation in representing Pacheco in the appeal and the trial court action. Respondent kept Lefebvre's funds even though respondent failed to perform any meaningful work on the appeal. And, respondent misled Lefebvre as to respondent's intention to file the motion for reconsideration in the trial court action. As a result of respondent's dishonesty and deceit, Lefebvre was damaged through the loss of her $1500 "down payment" and Pacheco was harmed by losing his rights of appeal and by losing his right to file a motion for reduction of sentence in the trial court action. Based on the foregoing, respondent should be subjected to discipline, as provided in C.R.C.P. 251.5, for violation of Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM VI

### [Failure to respond reasonably to a lawful demand for information from a disciplinary authority-Colo. RPC 8.1(b) and C.R.C.P. 251.5(d) ]

70. Paragraphs 1 through 68 are incorporated herein.

71. Rule 8.1(b), Colorado Rules of Professional Conduct, provides: "A lawyer ... in connection with a disciplinary ... matter, shall not ... knowingly fail to respond reasonably to a lawful demand for information from [a] ... disciplinary authority...."

72. Rule 251.5(d), Colorado Rules of Civil Procedure, provides: "Misconduct by an attorney, ... including the following acts or omissions, shall constitute grounds for discipline ...:(d) failure to respond without cause shown to a request by ... the Regulation Counsel...."

73. Respondent knowingly failed and refused without good cause to respond to the investigation in this action, despite repeated requests that he do so. The facts are as follows.

74. On August 9, 2001, Louise Culberson–Smith, Assistant Regulation Counsel, sent to respondent via certified mail a request for investigation. Ms. Culberson–Smith requested that respondent file a response to the request for investigation filed by Lefebvre. Respondent was to file his response within twenty days of his receipt of Ms. Culberson–Smith's letter.

75. Ms. Culberson–Smith's letter to respondent was received by one Crystal Lindfors, a person at respondent's address of 1200 Madison, Suite 654, Denver, Colorado 80206, on August 10, 2001. Respondent failed to file any response to the request for investigation, either within twenty days or thereafter.

76. On September 10, 2001, Charles E. Mortimer, Jr., another Assistant Regulation Counsel, wrote to respondent at several of his known addresses, including the address listed in the paragraph above, pointing out to respondent that respondent's response to the request for information was overdue. Mr. Mortimer advised respondent that, if respondent failed to respond, the investigation would proceed and the allegations in the request for investigation would be deemed uncontroverted. Mr. Mortimer further advised respondent that failure to cooperate can be, in and of itself, grounds for discipline. Respondent still did not contact the Office of

Attorney Regulation Counsel or otherwise respond to the request for investigation.

77. In late 2001, the Office of Attorney Regulation Counsel located respondent at a new address, 8380 Miramar Mall, # 234, San Diego, California 92121. Mary Lynne Elliott, an investigator with the Office of Attorney Regulation Counsel, forwarded to respondent at that address copies of documents related to Lefebvre's complaint.

78. On January 16, 2002, Ms. Elliott again wrote to respondent, reminding him that the investigation had been assigned to Mr. Mortimer, and again requesting that he respond to the request for investigation within ten days. Respondent did not comply with this request.

79. On February 6, 2002, Mr. Mortimer again wrote to respondent at the San Diego, California address set forth above. Mr. Mortimer again reminded respondent of his obligation to respond to the request for investigation. Mr. Mortimer asked respondent to send a response within ten days. Mr. Mortimer reminded respondent again that failure to cooperate can be, in and of its self, grounds for discipline. Again, respondent ignored Mr. Mortimer's request that he cooperate.

80. On February 25, 2002, Mr. Mortimer again wrote to respondent at the San Diego, California address. Mr. Mortimer enclosed a proposed report of investigation. Mr. Mortimer gave respondent until March 6, 2002 to contact Mr. Mortimer or submit a written statement. Respondent again failed to cooperate.

81. On March 11, 2002, John S. Gleason, Regulation Counsel, wrote to respondent at the San Diego, California address listed above. Mr. Gleason informed respondent that the request for investigation of respondent's conduct had been considered by the Attorney Regulation Committee and that the Committee had determined the investigation disclosed facts warranting further proceedings by complaint. As he had with prior correspondence, respondent ignored this let-

ter and has not to date contacted the Office of Attorney Regulation Counsel.[5]

82. From the foregoing, it is clear that respondent knowingly failed to respond without good cause to the requests of Attorney Regulation Counsel for information about Lefebvre's request for investigation. Based on this, respondent should be subjected to discipline, as provided in C.R.C.P. 251.5, for violation of Colo. RPC 8.1(b) and C.R.C.P. 251.5(d).

WHEREFORE, the complainant prays at the conclusion hereof.

WHEREFORE, it is prayed that the respondent be found guilty of violations of various rules of conduct which establish grounds for discipline as provided in C.R.C.P. 251.5, and the Colorado Rules of Professional Conduct and that he be appropriately disciplined and assessed the costs of these proceedings.

Kim E. Ikeler, # 15590

Assistant Regulation Counsel

John S. Gleason, # 15011

Regulation Counsel

Attorneys for Respondent

---

5. None of the letters sent by the Office of Attorney Regulation Counsel to the respondent at the San Diego, California address have been returned.